UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM FENWICK and | : | |
| TIMOTHY FISHER, on behalf | : | 3:06cv880 (WWE) |
| of themselves and all others | : | |
| similarly situated, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MERRILL LYNCH & CO., INC., | : | |
| MERRILL LYNCH, PIERCE, FENNER | : | |
| & SMITH INCORPORATED, | : | |
| ADVEST GROUP, INC., | : | |
| and ADVEST, INC., | : | |
|     Defendants. | : | |

## RULING ON MOTION TO DISMISS

The plaintiffs, William Fenwick and Timothy Fisher, brought this action on behalf of themselves and all similarly situated adult participants and/or beneficiaries of the Advest, Inc. Account Executive Nonqualified Defined Benefit Plan ("AE Plan") who have been or will be denied benefits under the AE Plan because they terminated their employment at Advest.

Plaintiffs assert claims to recover benefits pursuant to the Employee Retirement Income Security Act ("ERISA") for breach of contract, breach of minimum vesting standards, breach of fiduciary duty and breach of disclosure obligations.

Defendants have moved to dismiss the complaint in its entirety. For the following reasons, the Court will grant the defendants' motion to dismiss in part.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true. The following factual background is reflected in the facts of the

complaint and the operative plan instruments.

Plaintiff William Fenwick was employed as a broker for Advest between 1994 and November 2005 when he terminated his employment with the company. At some time during this period, Mr. Fenwick became a participant in the AE Plan.

Plantiff Timothy Fisher was employed as a broker for Advest beginning in 1995 until he terminated his employment on December 9, 2005. Mr. Fisher became a participant in the AE Plan in 1999.

The AE Plan was established as an unfunded plan by Advest in 1992 in order to attract and retain experienced securities brokers by setting aside substantial cash benefits that would accrue on the brokers' behalf based on the brokers' credited sales commissions and years of service.

The AE Plan stated that it was available to "a select group of highly compensated account executives." However, it was made available to all of Advest's brokers who achieved not less than the level of "Gross Commissions" applicable to the relevant fiscal year. After becoming a participant in the plan, the broker continued to be a participant regardless of the amount of subsequent commissions.

In section 10.4(a), the AE Plan provided that all payments of benefits to any Participant "shall be discontinued and forfeited," if

> (a) <u>Termination During Initial Ten-Year Period</u>. The Participant's service with the Company is terminated before the Participant has completed the Initial Ten-Year Period, unless such termination occurs: (i) as a result of death or Permanent Disability; (ii) after the Participant has attained age 65; or (iii) more than 9 months, but not more than 24 months, following a Change of Control.

"Change of Control" is defined by the AE Plan as:

> a transfer or sale of substantially all of the assets of the Company or merger or consolidation of the Company into or with any other corporation or entity that occurs after October 1, 1992 provided either (a) the other corporation or entity is engaged in the retail securities brokerage business at the date of the transaction and such transaction results in the company not surviving such merger or consolidation or (b) a substantial change in the senior management of the company occurs within six months as a result of the transaction.

The AE Plan designates a Committee comprising individuals appointed by the Board of Directors. The AE Plan affords the Committee "all the powers necessary" to administer and operate the plan, including the power to issue or amend rules and regulations, to construe the plan terms, and to determine all questions arising in the administration of the plan. The Committee's decisions are final and binding.

The AE Plan allowed the Board of Directors to "amend, modify, change, revise or discontinue this Plan by amendment at any time," provided that "(a) no amendment shall increase the duties or liabilities of the Board of Directors or the Committee without written consent of each member and (b) no amendment shall be made without the written consent of a Participant if the effect of such amendment would reduce a Participant's Benefit to the extent accrued as of the date of the amendment."

Effective October 31, 2005, Advest adopted the Second Amendment to the AE Plan. The Second Amendment eliminated the period from 9 to 24 months following a Change of Control during which a participant could terminate employment without forfeiting benefits for failure to satisfy the 10-year vesting requirement. The amendment also modified the AE Plan by providing for full vesting and payment of accrued benefits

to participants whose benefits had not yet vested but were still employed on June 30, 2007.

## **DISCUSSION**

Defendants argue that the entire complaint should be dismissed on a variety of grounds, including failure to name the proper defendants, lack of standing, failure to exhaust administrative remedies, failure to state a claim for breach of fiduciary duty, and failure to state a claim for relief for breach of disclosure duty.

<u>Improper Defendants: Counts One, Two, and Four</u>

In claims for recovery of benefits pursuant to ERISA Section 502(a), 29 U.S.C. Section 1132(a), such as plaintiffs' counts one and two, "only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." <u>Leonelli v. Pennwalt Corp.</u>, 887 F.2d 1195, 1199 (2d Cir. 1989). In <u>Crocco v. Xerox Corp.</u>, 137 F.3d 105, 107 (2d Cir. 1998), the Second Circuit held that this principle applied even where the employer was a <u>de</u> <u>facto</u> plan administrator. <u>See</u> <u>Yoon v. Fordham University Faculty</u>, 173 Fed.Appx. 936, *941 (2d Cir. 2006).

ERISA defines the term "administrator" as (1) "the person specifically so designated by the terms of the instrument under which the plan is operated;" (2) "if an administrator is not so designated, the plan sponsor;" or (3) "in the case of a plan for which an administrator is not so designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

In this instance, the AE Plan unambiguously designates the Committee as the plan administrator and therefore the named defendants cannot be considered the

proper defendants. Courts following Second Circuit precedent have rejected plaintiffs' argument that the employer company is a proper defendant where members of the plan administrator Committee are appointed by the Board of the Directors and serve as agents of the Board. See Steger v. Delta Airlines, Inc., 382 F.Supp.2d 382, 386 (E.D.N.Y. 2005) (citing cases).

Since plaintiffs have not sued the AE Plan or the Committee that serves as the plan administrator, the named defendants are not proper defendants on counts one and two.[1] Similarly, count four alleging breach of disclosure obligations under ERISA § 102 is also improperly alleged against the named defendants rather than the Committee as the plan administrator. Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 104 (2d Cir. 2005) (dismissing claims for breach of ERISA disclosure obligations brought against non-plan administrator).

As will be discussed, count one is also subject to dismissal on the alternative ground of insufficient standing. Accordingly, only count two and four will be dismissed without prejudice with leave for plaintiffs to amend the complaint to name the proper defendants.

Standing: Count One

Defendants argue that plaintiffs lack standing to assert their claim for breach of contract in violation of ERISA. Specifically, defendants assert that plaintiffs are unable to demonstrate a redressable injury resulting from the plan amendment that eliminated

---

[1] The AE Plan is unfunded and therefore it has no "trustee."

the exception to benefit forfeiture during the 9-to-24 month period following a change of control.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or threatened injury as a result of the illegal conduct of the defendant; (2) the injury is fairly traceable to the challenged action; and (3) the injury is redressable by a favorable decision. <u>Valley Forge Christian College v. Americans United for Separation of Church and State</u>, 454 U.S. 464, 472 (1982).

ERISA § 502(a) affords a right of action to participants, beneficiaries and fiduciaries of benefit plans. ERISA defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or who may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002 (7). A participant includes "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." <u>Firestone Tire & Rubber v. Bruch</u>, 489 U.S. 101, 117 (1989).

Prior to its October 31, 2005 amendment, section 10.4 of the AE Plan provided that a participant forfeited his or her benefits if termination of employment with Advest occurred within the first 10 years of becoming a plan participant unless such termination occurred "more than 9 months, but not more than 24 months, following a Change of Control." In accordance with the allegations of the complaint, plaintiffs terminated their employment in the period of November through December 2005, prior to Advest's

"Change of Control". Plaintiffs do not challenge defendants' representation that their termination of employment occurred prior to the commencement of the 9-to-24 month window following a "Change of Control" as provided by the unamended term. Thus, plaintiffs forfeited their benefits prior to the commencement of the 9-to-24 month window period following a change of control. With neither a colorable claim to vested benefits nor an allegation of a reasonable expectation of returning to covered employment, plaintiffs lack standing to assert a breach of contract claim based on the plan amendment. Count one will be dismissed with prejudice on this ground.

Failure to Exhaust: Count Two

Defendants assert that plaintiffs' failure to exhaust their administrative remedies compels dismissal of count two. Plaintiffs counter that failure to exhaust is not fatal to their cause of action because the AE Plan describes no remedies that plaintiff should exhaust prior to filing suit.

Relevant to exhaustion, ERISA regulation 29 C.F.R. § 2560.503-1(l) provides:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

ERISA-compliant claims procedures include, inter alia, timely benefit determinations, written or electronic explanation of adverse determinations, and the opportunity for appeal. Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 221 n.7 (2d Cir. 2006).

Defendants submit that the AE Plan sets forth an administrative remedy by providing that the Committee has the power to "determine all questions ... relating to the ... rights of Participants and their Beneficiaries to receive Benefits." Defendants' contention is unpersuasive.

In Eastman Kodak Co., the plan conferred "full power and authority" on the Plan Committee to make "binding and conclusive" decisions on benefit claims and all other issues arising under the plan. The Second Circuit held that the plan lacked a claims procedure and therefore plaintiff was deemed to have exhausted the available administrative remedies in accordance with the ERISA regulation § 2560.503-1(l). Here, the AE Plan also prescribes no procedural remedies for plaintiffs to exhaust prior to bringing suit in district court. Accordingly, the motion to dismiss will be denied on this ground.

### Failure to Allege that the AE Plan Was Not a Top-Hat Plan: Counts Two & Three

Defendants argue that dismissal of counts two and three is necessary because the complaint fails to establish that the AE Plan did not constitute a "top-hat plan" that is exempt from ERISA's minimum vesting standards and fiduciary responsibilities. Plaintiffs counter that the complaint's allegations are sufficient to state their claims.

A top-hat plan is an unfunded plan designed to provide a select group of management or highly compensated employees with deferred compensation. Eastman Kodak Co., 452 F.3d at 217; Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 286-87 (2d Cir. 2000). In this instance, the AE Plan states that it was established "for a select group of highly compensated account executives."

Nevertheless, plaintiffs allege that the AE Plan "exceeded the maximum

percentage threshold for it to have been considered limited to 'a select group of management or highly compensated employees.'" Defendants maintain that plaintiffs' allegations establish that 15% or more of the workforce was eligible to participate in the AE Plan, which amount is sufficient to meet the "select group" criteria for a top-hat status.

The Second Circuit instructs district courts to engage in "a fact-specific inquiry" of qualitative and quantitative data to determine whether participants for an employee benefit plan constitute a "select group of management or highly compensated employees." Id. at 288.

Defendants' argument may eventually compel judgment in their favor. However, the necessary calculus requires the Court to consider plaintiffs' evidentiary proof on summary judgment. Accordingly, the motion to dismiss will be denied on counts two and three on this basis.

Failure to Allege a Fiduciary Duty: Count Three

In count three, plaintiffs allege breach of fiduciary duty pursuant to ERISA by "causing the AE Plan to be amended for the purpose of inducing Merrill Lynch to enter into an agreement to acquire AGI and Advest and in attempt to coerce Advest brokers into remaining Merrill Lynch employees" by eliminating the 9-to-24 month forfeiture exception period following a Change of Control. Defendants assert that this claim should be dismissed because amending a plan is not a fiduciary act and the named defendants are not fiduciaries.

Regardless of whether a breach of fiduciary duty claim may be asserted against any of the named defendants, United States Supreme Court precedent militates in

favor of dismissal of plaintiffs' breach of fiduciary duty claim based on amendment of the complaint.

In <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 443-44 (1999), the Supreme Court held that ERISA's fiduciary duty requirement was not implicated when an employer or plan sponsor makes an amendment regarding the plan's form or structure relative to who is entitled to receive benefits or how such benefits are calculated. <u>See also</u> <u>Lockheed Corp. v. Spink</u>, 517 U.S. 882, 890 (1996) (an employer does not act as a fiduciary when it establishes, modifies or terminates an ERISA-covered pension plan). Accordingly, the motion to dismiss will be granted as to count three.

<u>Failure to State a Claim for Relief: Count Four</u>

Defendants assert that count four concerning defendants' failure to meet their disclosure obligations should be dismissed due to failure to include a prayer for relief.

A valid cause of action must be redressable in some form by the court. <u>See</u> <u>Valley Forge Christian College</u>, 454 U.S. at 472. Plaintiffs' complaint contains a request for the Court to award "appropriate relief." Plaintiffs submit that this relief could take the form of injunctive relief and/or a statutory penalty pursuant to 29 U.S.C. § 1132. Consonant with the liberal standard of federal pleading described in Federal Rule of Civil Procedure 8, plaintiffs' request for appropriate relief, coupled with their evocation of the relevant section of ERISA, is sufficient to state a valid cause of action.

## **CONCLUSION**

Based on the foregoing, the motion to dismiss [doc.#22] is GRANTED in part and DENIED in part. Counts one and three are dismissed with prejudice. Counts two and four are dismissed without prejudice with leave to amend to name the proper

defendants.  Plaintiffs are instructed to amend the complaint consistent with this ruling within fifteen days of this ruling's filing date.

_____/s/_____
Warren W. Eginton, Senior U.S District Judge

Dated this 5th day of March 2007, at Bridgeport, Connecticut.