# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM FENWICK and TIMOTHY FISHER, on behalf of themselves and all others similarly situated, Plaintiff, | : : : : : : | 3:06cv880 (WWE) |
| v. | : : | |
| MERRILL LYNCH & CO., INC., et al., Defendants. | : : : : | |

## RULING ON MOTION TO DISMISS

Plaintiffs William Fenwick and Timothy Fisher brought this action on behalf of themselves and all similarly situated adult participants and/or beneficiaries of the Advest, Inc. Account Executive Nonqualified Defined Benefit Plan ("AE Plan") who have been or will be denied benefits under the AE Plan due to termination of their employment at Advest.

After the Court ruled on a motion to dismiss, plaintiffs filed an amended complaint alleging breach of minimum vesting standards under ERISA (count one), breach of fiduciary duty under ERISA (count two), and breach of disclosure requirements under ERISA (count three). Defendants now move to dismiss count two alleging breach of fiduciary duty. For the following reasons, the motion to dismiss will be denied.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the complaint to be true. The following factual background relates to count two of the operative complaint.

Plaintiff William Fenwick was employed as a broker for Advest between 1994

and November 2005 when he terminated his employment with the company. At some time during this period, Mr. Fenwick became a participant in the AE Plan.

Plantiff Timothy Fisher was employed as a broker for Advest beginning in 1995 until he terminated his employment on December 9, 2005. Mr. Fisher became a participant in the AE Plan in 1999.

The AE Plan was established as an unfunded plan by Advest in 1992 in order to attract and retain experienced securities brokers by setting aside substantial cash benefits that would accrue on the brokers' behalf based on the brokers' credited sales commissions and years of service.

The AE Plan stated that it was available to "a select group of highly compensated account executives." However, it was made available to all of Advest's brokers who achieved not less than the level of "Gross Commissions" applicable to the relevant fiscal year. After becoming a participant in the plan, the broker continued to be a participant regardless of the amount of subsequent commissions.

In section 10.4(a), the AE Plan provided that all payments of benefits to any Participant "shall be discontinued and forfeited," if

> (a) <u>Termination During Initial Ten-Year Period</u>. The Participant's service with the Company is terminated before the Participant has completed the Initial Ten-Year Period, unless such termination occurs: (i) as a result of death or Permanent Disability; (ii) after the Participant has attained age 65; or (iii) more than 9 months, but not more than 24 months, following a Change of Control.

"Change of Control" is defined by the AE Plan as:

a transfer or sale of substantially all of the assets of the Company or merger or consolidation of the Company into or with any other corporation or entity that occurs after October 1, 1992 provided either (a) the other corporation or entity is engaged in the retail securities brokerage business at the date of the transaction and such transaction results in the company not surviving such merger or consolidation or (b) a substantial change in the senior management of the company occurs within six months as a result of the transaction.

The AE Plan designates a Committee comprising individuals appointed by the Board of Directors. The AE Plan affords the Committee "all the powers necessary" to administer and operate the plan, including the power to issue or amend rules and regulations, to construe the plan terms, and to determine all questions arising in the administration of the plan. The Committee's decisions are final and binding.

The AE Plan allowed the Board of Directors to "amend, modify, change, revise or discontinue this Plan by amendment at any time," provided that "(a) no amendment shall increase the duties or liabilities of the Board of Directors or the Committee without written consent of each member and (b) no amendment shall be made without the written consent of a Participant if the effect of such amendment would reduce a Participant's Benefit to the extent accrued as of the date of the amendment."

Effective October 31, 2005, Advest adopted the Second Amendment to the AE Plan. The Second Amendment eliminated the period from 9 to 24 months following a Change of Control during which a participant could terminate employment without forfeiting benefits for failure to satisfy the 10-year vesting requirement. The amendment also modified the AE Plan by providing for full vesting and payment of accrued benefits

to participants whose benefits had not yet vested but were still employed on June 30, 2007.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Igbel v. Hasty, – – F.3d – – , 2007 WL 1717803 *10-11 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

Defendants argue that count two alleging breach of fiduciary duty should be dismissed because it is duplicative of count one, fails to state a claim for a breach of fiduciary duty, and fails to allege a basis for relief.

As an initial matter, the Court will not dismiss the count on the ground that it is essentially the same as plaintiffs' section 503(a)(3) claim of count one.[1] In support of

---

[1] ERISA section 503(a)(3) allows a plan participant to bring a civil action "to enjoin any act or practice which violates" any ERISA provision, or to obtain other appropriate equitable relief to redress such violation or enforce an ERISA provision or term of the plan.

4

their assertion, defendants rely, inter alia, upon Campanella v. Mason Tenders' District Council Pension Plan, 299 F.Supp.2d 274, 280 (S.D.N.Y. 2004) and Laurenzano v. Blue Cross and Blue Shield of Massachusetts, Inc. Retirement Home Trust, 134 F.Supp.2d 189, 194 (D.Mass. 2001). These cases do not militate in favor of a dismissal of count two. In Campanella, the district court, in construing ERISA claims for purposes of determining the proper statute of limitations, held that the claim could not be characterized as a breach of fiduciary duty claim where it lacked allegations relative to ERISA fiduciary duties. Laurenzano held that the statute of limitations for breach of fiduciary duty claims did not apply to claims brought under ERISA section 503(a)(3).

In the instant case, plaintiff alleges that the plan fiduciaries "knew or should have known" that the Plan was not in compliance with ERISA requirements for top-hat plans.[2] A plaintiff may assert a breach of fiduciary duty claim based on a fiduciary's acts that are consistent with a plan that is ERISA non-compliant. Smith v. Contini, 205 F.3d 597, 605 (3rd Cir. 2000).

Defendants argue that any relief obtained under count two is entirely duplicative of relief that would be recoverable under count one. Even if defendants are correct in this assertion, the Court will not dismiss the count on this ground. At this stage of the pleadings, plaintiffs should be permitted to plead the breach of fiduciary duty in the alternative to count one. See Fed. R. Civ. Pro. 8(e).

Defendants contend that dismissal is appropriate because the only action that

---

[2]Top-hat plans are unfunded plans designed to provide a select group of management or highly compensated employees with deferred compensation. See Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 286-87 (2d Cir. 2000).

the Plan fiduciaries could have taken to ensure ERISA compliance was to amend the Plan, which is a settlor rather than a fiduciary function.  Plaintiffs do not contest that amendment of the complaint is not a fiduciary function.  However, plaintiffs counter that the fiduciaries could have taken other actions to bring the Plan into compliance with ERISA's substantive requirements, including alerting the AE Plan sponsors that the Plan violated ERISA, requesting that the Plan sponsors bring the Plan into compliance, or refusing to administer the Plan until it was made to comply with ERISA.

Defendants respond that plaintiffs have no precedent or other authority for imposing liability upon the fiduciary defendants based on a failure to warn the Plan sponsors that the AE Plan was not in compliance with ERISA top-hat requirements.  Defendants maintain that, even if plaintiffs could proceed on such a theory, the Plan sustained no losses because it was unfunded.

Plaintiffs submit that they have adequately alleged that the Plan was not a top-hat plan, that it should have been funded, and that the fiduciaries failed to take the proper steps to secure funds owed to the Plan.   In support of their position, plaintiffs rely, inter alia, on McMahon v. McDowell, 794 F.2d 100, 112 (3d Cir. 1986), which provides that "whenever an employer seeks to avoid making its pension plan payments, . . . trustees have a duty to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit against the employer."  The Court will not dismiss the breach of fiduciary duty claim on this motion but leaves plaintiffs to their proof that the Plan was not in compliance with ERISA for top-hat plans, and that it should have been funded.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. # 46 ] is DENIED.

_____/s/_____

Warren W. Eginton, Senior U.S District Judge

Dated this _19__th day of September 2007, at Bridgeport, Connecticut.