# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WILLIAM FENWICK and TIMOTHY FISHER, On : 
Behalf of Themselves and Others Similarly Situated, :

                     *Plaintiffs*,

            v.

MERRILL LYNCH & CO., INC., MERRILL LYNCH, : 
PIERCE, FENNER & SMITH INCORPORATED, : 
ADVEST GROUP, INC., ADVEST, INC., THE : 
ADVEST, INC. ACCOUNT EXECUTIVE : 
NONQUALIFIED DEFINED BENEFIT PLAN, : 
ADVEST, INC. ACCOUNT EXECUTIVE : 
NONQUALIFIED DEFINED BENEFIT PLAN : 
COMMITTEE, LOU DIMARIA, FRANK : 
PAPARELLA, AND KEN POLITI, :

                   *Defendants*.

CIVIL ACTION NO.

3:06CV00880 (WWE)

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   FACTS ......................................................................................................... 3

IV.   ARGUMENT ............................................................................................... 4

    A.    Plaintiffs claims are not time barred because (1) the Section 502(a)(1)(B) claim did not accrue until the Plan clearly repudiated benefits and applied a provision forfeiting plaintiffs retirement benefits and (2) the Section 502(a)(3) claim did not accrue until Plaintiff's either had actual knowledge of the fiduciary breach or the date of the last omission by the defendants. ......................................................... 4

        1.    The Statute of Limitations On Plaintiffs' Claim For Benefits Under  Section 502(a)(1)(B) Did Not Begin to Run, At the Earliest, Until  Circumstances Resulted In The Plan's Forfeiture Provisions Being  Applied To  Deprive Plaintiffs of Their Accrued Retirement Benefits ................................................. 5

        2.    Defendants have failed to show that plaintiffs had actual knowledge of the alleged breached such that ERISA's three limitations period bars the    Section 502 (a)(3) claim............................................................................................. 14

    B.    Defendants incorrectly assert that ERISA provides no remedy for the forfeiture of their accrued retirement benefits. First, plaintiffs    properly seek benefits under the enforceable provisions of the AE    Plan.  Second, the Court should reject defendants' narrow reading of    Section 502(a)(1)(B) because it is inconsistent with ERISA's    underlying purpose.  Third, plaintiffs have injunctive and equitable    remedies available under 502(a)(3) to remedy both the statutory and    fiduciary breaches, notwithstanding that the Plan was terminated more than a year after suit was filed. Finally, defendant ignores    plaintiffs' claim for relief under Section 502(a)(2). ....................................................... 20

        1.    The terms of the Plan specifically provide that provisions found to be unlawful will not be enforced and will be deemed to not have been included. Thus, plaintiffs have stated a valid claim under Section 502(a)(1)(B). ................. 21

        2.    Defendant's incorrectly assert that participants lack a claim for benefits when they allege that the terms of the Plan used to deprive them of benefits violate ERISA's substantive provisions.......................................................................... 22

        3.    Defendants incorrectly assert that plaintiffs lack a remedy for the alleged violations under Section 502(a)(3).  Plaintiffs are entitled to an injunction against defendants (including the Plan) that prohibit them from enforcing invalid

provisions.  Also, reformation of the Plan (if necessary) can still be ordered notwithstanding the termination and, finally, the a request for benefits cannot be deemed monetary damages. ................................................................. 29

(a)   The AE Plan has not automatically terminated as defendants contend. However, assuming termination of the plan occurred after the filing of this suit, such event does not deprive the court of the power to enjoin further violations or to reinstate the Plan and reform its provisions. ..................................................... 30

(b)      Plaintiffs seek meaningful appropriate equitable relief under § 502(a)(3)(B) to redress fiduciary and/or statutory violations that cannot be fairly characterized as monetary damages. ................................................................... 32

(c)      Plaintiffs request for injunctive relief under § 502(a)(3)(A) is not a request for monetary damages in the form of legal restitution. The requested injunction seeks to prevent defendants from applying forfeiture provisions that clearly violate ERISA. ............................................................................................... 36

4.    The Complaint also seeks relief for the fiduciary breaches under Section 502(a)(2).  The Supreme Court recently held that a participant can assert a claim for individual benefits under Section 502(a)(2). .................................................. 39

V.   CONCLUSION ........................................................................ 40

CERTIFICATE OF ELECTRONIC SERVICE ............................................... 42

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Bosch Automotive Systems*, 232 Fed. Appx. 491 (6th Cir. 2007) ................. 38

*Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F. 2d 1406 (9th Cir. 1988) ......................................................................................................................... 32

*Anderson v. Consolidated Rail Corp*, 297 F. 3d 242 (3rd Cir. 2007) ................................ 27

*Boggs v. Boggs*, 520 U.S. 833, 845 (1997) ....................................................................... 11

*Broga v. Northeast Utilities*, 315 F. Supp. 212, 221 (D. Conn. 2004) .............................. 17

*Caputo v. Pfizer*, 267 F.3d 181, 193 (2d Cir. 2001) ........................................ 16, 17, 18, 20

*Carey v. International Broth. Of Electrical Workers*, 201 F.3d 44 (2nd Cir. 1999) .......... 12

*Carrabba v. Randall Food Markets*, 145 F. Supp. 2d 763 (N.D. Tex. 2000), *aff'd*, 252 F. 3d 721 (5th Cir. 2001)(*per curiam*), *cert. denied*, 534 U.S. 995 (2001) ...... 28, 33, 34, 36

*Central Laborers' Pension und v. Heinz*, 541 U.S. 739, 743 (2004) .................... 11, 24, 29

*Coan v. Kaufman*, 333 F. Supp. 2d 14 (D. Conn. 2004) ...................................... 31, 34, 35

*Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir. 1978) ........... 12

*Dade v. North Am. Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir.1995) .............................. 28

*Daft v. Advest*  2008 WL 190436 (N.D. Ohio) ................................................................. 19

*De Pace v. Matsushita Elec. Corp.* 257 F. Supp. 2d 543, 566-67 (E.D.N.Y. 2003) ......... 35

*Devito v. Pension Plan of Local 819 IBT Pension Fund*, 975 F. Supp. 2d 258 (S.D.N.Y 1997) ....................................................................................................... 8, 9, 13, 35

*Dunnigan v. Metropolitan* Life, 99 F. Supp. 2d 307, 320  (S.D.N.Y. 2000) .................. 8, 9

*Edson v. Bank of Boston*, 229 F. 3d 154, 161-162 (2d Cir. 2000) .............................. 24, 27

*Eichorn v. AT&T Corp.* 484 F. 3d 644 (3rd Cir. 2007) ................................................... 27

*Frommert v. Conkright*, 443 F. 3d 254 (2d Cir. 2006) .............................................. 25, 27

*Great-West v. Knudson* .................................................................................... 29, 37, 38

*Harris Trust & Savings v. Solomon Smith Barney*, 530 U.S. 230 (2000)........................ 38

*Hein v. FDIC*, 88 F.3d 210, 215 (3d Cir.1996) ................................................................ 28

*In Re New Century Holdings*, 2008 WL 1829587 (Bankr. D. Del.) ............................... 34

*Jackson v. Trucker Drivers' Union Local 42 Health and Welfare Fund,* 933 F. Supp. 1124 (D. Mass. 1996) ...................................................................................................... 31

*LaRue v. DeWolff, Boberg & Associates, Inc.*. 128 S.Ct. 1020 (2008)............................ 40

*LaScala v. Scrufari*, 479 F. 3d 213 n.1 (2d Cir. 2007)................................................. 15, 17

*Mathews v. Chevron Corp*, 362 F. 3d 1172, 1185-1186 (9th Cir. 2004) ......................... 35

*McBride v. v. PLM Intern. LTD*, 179 F. 3d 737, 739 (9th Cir. 1999) .............................. 32

*Meagher v. IAM Pension Plan*, 856 F. 2d 1418 (9th Cir. 1988) ................................. 7, 8, 9

*Miles v. N.Y. State Teamsters Conf. Pension and Retirement Fund*, 698 F.2d 593, 598 (2d Cir. 1983) ....................................................................................................................... 6

*Nechis v. Oxford Health Plans*, 421 F. 3d 96, 103 (2d Cir. 2005).................................... 39

*Page v. PBGC*  968 F. 2d 1310,  (D.C. Cir. 1992)............................................................. 23

*Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503 (S.D.N.Y. 2006)............. 39

*Reich v. Johnson*, 891 F. Supp. 208 (D.N.J. 1995) .......................................................... 15

*Roberts v. Fearless Farris Service Stations*, 2007 WL 2705587 (D. Idaho) ................... 34

*Romero v. Allstate Corp.*, 404 F. 3d 212, 222-223 (3rd Cir. 2005) ........................... passim

*Ross v. Rail Car Am. Group Disability Income Plan*, 285 F. 3d 735 (8th Cir. 2002)........ 28

*Sereboff v. Mid-Atlantic Med. Servs. Inc.*, 126 S. Ct. 1874 (2006).................................. 37

*Strohmeyer v. Metropolitan Life Ins. Co. et al.*, 2005 WL 3963770 (D. Conn. Nov. 15, 2005) .............................................................................................................................. 26

*Stack v. Am. Med. Int'l Inc.,* 2005 WL 661934 (D. Neb. March 21, 2005) ..................... 13

*Stavola v. Northeast Utilities*, 453 F. Supp. 2d 584, 590 (D. Conn. 2006).......... 16, 17, 18

*Strom v. Goldman, Sachs & Co.* 202 F. 3d 138 (2d Cir. 1999) .................................... 8, 26

iv

*Union Pacific Railroad Co. v. Beckham, 138 F.3d 325* (8th Cir. 1998)........................... 12

*Varity Corp. v. Howe*, 516 U.S. 489 (1996)...................................................... 21, 28, 32, 36

*West v. AK Steel*, 484 F. 3d 395, 405 (6th Cir. 2007) .................................................. 22, 23

*Wilson Land Corp. v. Smith Barney*, 1999 WL 1939270 (E.D.N.C) ................................ 15

*Yuhas v. Provident Life and Cas. Ins. Co.,* 162 F.Supp.2d 227, 231-32 (S.D .N.Y.2001) . 6

*Ziegler v. Connecticut General Life Ins. Co.,* 916 F.2d 548, 551 (9th Cir. 1990) ............. 13

**Statutes**

29 U.S.C. § 1002 (14) ........................................................................................... 38

29 U.S.C. § 1053(a) .............................................................................................. 24

29 U.S.C. § 1054(g) .............................................................................................. 25

29 U.S.C. § 1082 .................................................................................................. 38

29 U.S.C. § 1104(a)(1)(D) ..................................................................................... 29

29 U.S.C. § 1113 ............................................................................................. 14, 16

29 U.S.C. § 406(a) ................................................................................................ 38

29 U.S.C. §§ 1053 and 1054 .............................................................................. 7, 22

29 U.S.C. §§ 1103-1104.......................................................................................... 40

Section 1132(a)(1)(B) ............................................................................................ 26

Section 203(a) ...................................................................................................... 24

Section 502(a)(1)(B) ........................................................................................ passim

Section 502(a)(2).............................................................................................. 39, 40

Section 502(a)(3).............................................................................................. passim

**Rules**

Fed. R. Civ. P. 56(c)............................................................................................... 3

Fed. R. Civ. P. 56(f) ............................................................................................... 3

# I.     PRELIMINARY STATEMENT

Without disputing, for purposes of their motion for summary judgment, that the Advest, Inc. Account Executive Nonqualified Defined Benefit Plan (the "AE Plan" or the "Plan") was not a top-hat plan and, thus, violated multiple substantive provisions of ERISA (including the minimum vesting, funding, accrual and disclosure requirements), defendants nevertheless argue that plaintiffs claims must be dismissed, either because they are time-barred or they lack a remedy under ERISA's civil enforcement scheme.  All of defendants' arguments should be rejected, as they are contrary to applicable authority as well as the primary purpose underlying ERISA of protecting employees' justified expectations of receiving their benefits.

In essence, defendants argue that the statute of limitations on plaintiffs' claims began to run virtually from the moment that they became participants in the AE Plan. Thus, according to defendants, plaintiffs were required to bring their claims at the same time that they were happily employed at Advest and were accruing the full amount of their benefits under the Plan, years before plaintiffs had reason to believe those benefits would ever be denied.  Defendants' assert that failure to initiate such a preemptive action should result in plaintiffs' claims being time-barred; preemptive action that would have required plaintiffs to hire an ERISA specialist to review the plan immediately after becoming participants and then request information from the employer to test the validity of the exemption.   ERISA neither necessitates nor permits such a punitive accrual standard, which mandates that plaintiffs serve as watchdogs over potential ERISA abuses

and requires them to predict the future.    Applying the appropriate accrual rules[1] establishes that plaintiffs' claims are timely, as they were brought within months after plaintiffs' terminated their employment at Advest and became subject to the improper forfeiture requirements at issue in this case.

Equally unavailing are defendants' arguments that there is no available remedy for the AE Plan's substantive violations of ERISA and defendants' breach of their fiduciary duties.    Defendants first contend that plaintiffs are not entitled to bring a claim for benefits under 502(a)(1)(B) because the unlawful terms of the Plan allowed plaintiffs' benefits to be forfeited.    Then, defendants argue that plaintiffs are not entitled to relief under Section 502(a)(3), either because the Plan purportedly now has been terminated (a year after the action was filed) or because plaintiffs seek "monetary damages" that do not constitute a proper equitable remedy.    ERISA does not permit such a Catch-22 situation, which would immunize the most flagrant violations of ERISA from any liability, a result clearly at odds with the statute's motivating purpose. To the contrary, a participant who establishes an ERISA violation should be afforded a remedy unless there is some compelling ERISA-based reason for not doing so.    The relief plaintiffs seek is available for the following reasons:

- The terms of the AE Plan explicitly allow it to be enforced without giving effect to any provisions found to be unlawful.
- A plan may not contract around ERISA's substantive requirements.
- If the plan terminated (a matter subject to interpretation), such termination does not limit the injunctive and/or equitable remedies available to the Court.
- The fact that plaintiffs seek benefits does not turn their request for injunctive and declaratory relief into an impermissible request for money damages.

---

[1] As used herein, the phrase "ERISA's accrual rules" refers to the accrual of the statute of limitations. ERISA also has accrual rules that govern the accrual rate of benefits.

As set forth in detail below, defendants have failed to meet their burden of establishing that the undisputed facts demonstrate that plaintiffs' claims are untimely or that they are not entitled to the relief they seek. To the contrary, the record establishes that all of plaintiffs' claims are timely and the relief they request is appropriately available under ERISA's remedial scheme. [2]

## II.   FACTS

Plaintiffs set forth the facts they believe preclude summary judgment in their Local Rule 56(a)(2) statement.[3] The following is a short summary of relevant facts:

William Fenwick and Timothy Fisher became participants in the AE Plan in 1995 and 1997 respectively. (Fenwick Tr. 37:6-38:9; Fisher Tr. 12:21-25, 13:2-9). At the time they became participants in the Plan they were not provided with a copy of the Plan, nor were they provided with any detailed information regarding the terms of the Plan. (¶¶ 15 23, 24) At no time subsequent to terminating their employment with Advest did either plaintiff receive a copy of the AE Plan. (¶¶ 64, 65). Moreover, neither Mr. Fenwick nor Mr. Fisher understood the necessary criteria for a plan to qualify as a top-hat plan. (¶¶ 69-70). Additionally, neither Mr. Fisher nor Mr. Fenwick was aware of how many employees worked at Advest, or what percentage of Advest employees were eligible to participate in the Plan. (¶¶ 56-57).

---

[2] As the moving party, defendants bear the burden to establish that there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548. As noted above, defendants' motion relates solely to the issue of whether plaintiffs' claims are timely and whether the relief they seek is available under ERISA. Discovery related to the merits of plaintiffs' claims that defendants' have violated ERISA is ongoing. Accordingly, if the Court were to determine that there is a need to address any issue relating to the merits of plaintiffs' claims in order to resolve defendants' limited motion, pursuant to Fed. R. Civ. P. 56(f), plaintiffs request additional time to complete discovery of relevant facts related to their claims and present them to the Court. [CITE DECLARATON]

[3] References to Plaintiffs' Local Rule 56(a)(2) Statement are cited as "¶ __."

Plaintiff Fenwick and Plaintiff Fisher continued to work at Advest, accruing benefits under the AE Plan until November 3, 2005 and December 9, 2005 respectively. (¶ 75). They each made the decision to leave Advest following its impending acquisition by Merrill Lynch.   Prior to Advest's acquisition by Merrill Lynch, neither Mr. Fisher nor Mr. Fenwick had any intention of terminating their employment with Advest.  (¶ 47). Had they stayed, they would have continued to accrue benefits under the Plan, and would have been entitled to collect those benefits upon retirement. (¶ 44).

Upon termination of their employment with Advest, they each became subject to the forfeiture provisions of the Plan.   (AE Plan § 3.4)     Within eight months of terminating their employment with Advest, plaintiffs' initiated the present action.  (¶¶ 38, 75)   On March 31, 2008 defendants filed this motion for summary judgment, claiming that plaintiffs' claims are time-barred.  Defendants have not previously raised the statute of limitations as a defense, despite having filed two motions to dismiss.   Although defendants included the statute of limitations as an affirmative defense in their Answer with respect to certain members of the proposed class, they *did not* include this as an affirmative defense with respect to the individual plaintiffs.  (¶ 51).

### III.    ARGUMENT

**A.    Plaintiffs claims are not time barred because (1) the Section 502(a)(1)(B) claim did not accrue until the Plan clearly repudiated benefits and applied a provision forfeiting plaintiffs retirement benefits and (2) the Section 502(a)(3) claim did not accrue until Plaintiff's either had actual knowledge of the fiduciary breach or the date of the last omission by the defendants.**

1.    <u>The Statute of Limitations On Plaintiffs' Claim For Benefits Under Section 502(a)(1)(B) Did Not Begin to Run, At the Earliest, Until</u>

<u>Circumstances Resulted In The Plan's Forfeiture Provisions Being</u>
<u>Applied To Deprive Plaintiffs of Their Accrued Retirement Benefits</u>

It is undisputed that plaintiffs brought their claims within months after they terminated their employment at Advest. (¶¶ 38, 75).   Moreover, it is undisputed that until they left the Company, plaintiffs remained entitled to receive the full value of their accrued benefits just like any other AE Plan Participant.   (¶ 44).   Nevertheless, defendants argue that plaintiffs' claims are time barred, as the clock for suing the Plan for benefits purportedly began to run on the very first day that plaintiffs became participants in the Plan or shortly thereafter, years before they were denied their benefits and years before there was any indication that they would not be entitled to receive their benefits under the terms of the Plan.  On its face, the defendants' position is untenable and none of the cases they cite support such a punitive position.

As an initial matter, plaintiffs agree that Connecticut's six year statute of limitations for breach of contract actions applies to their Section 502(a)(B)(1) claim for benefits.  Plaintiffs further agree that the federal "discovery rule" governs the accrual date for a claim under ERISA.  Plaintiffs do not agree, however, that the statute of limitations on their claim for benefits began to accrue in this case at the time when they became participants in the AE Plan and/ or when they became aware of, or received a document, describing some of the Plan's terms.  It is this dispute that lies at the heart of defendants' argument.

The Second Circuit has held that the statute of limitations on a Section 502(a)(1)(B) claim for benefits generally does not begin to accrue until a formal application for benefits is denied.  *See, Lewis v. John Hancock Mut. Life Ins. Co.*, 6 F. Supp. 244, 247 (S.D.N.Y. 1998).  As the cases defendants rely on note, "occasionally,

however, an ERISA non-fiduciary claim will accrue before a formal application is made and/or before benefits are formally denied, such as 'when there has be a repudiation[of the benefits] by the fiduciary which is clear and made known to the beneficiar[y].'" *Romero v. Allstate Corp.*, 404 F. 3d 212, 222-223 (3rd Cir. 2005), *quoting Miles v. N.Y. State Teamsters Conf. Pension and Retirement Fund*, 698 F.2d 593, 598 (2d Cir. 1983). The significant feature of the "clear repudiation" standard is the recognition that, under some circumstances, a formal application and formal denial of a benefit claim should not be required to trigger the limitations period because the plaintiff had already "informally" sought benefits and been denied. In other words, whether the claim and/or denial of benefits is characterized as formal or informal should not necessarily determine the accrual date. *See Romero*, 404 F. 3d at 222-223.

Case law demonstrates, however, that courts should avoid an over expansive reading of the "clear repudiation" rule. The "clear repudiation" rule assumes that the plan has affirmatively applied or interpreted a plan provision in a manner that denies a participant's present claim for benefits. The mere adoption of a plan (or an amendment thereto) that may violate some ERISA provision does not, without more, constitute a "clear repudiation" of a participant's claim for benefits. To trigger the limitations period, the plan administrator must apply the disputed provision to a participant's claim for benefits and somehow inform the participant that benefits will be denied. *See, Yuhas v. Provident Life and Cas. Ins. Co.,* 162 F.Supp.2d 227, 231-32 (S.D .N.Y.2001) (observing that it is generally accepted in the Second Circuit that the "clear repudiation" standard requires that the plaintiff be "unequivocally notified that his or her claim for benefits has been denied").

Applying this standard to the facts of this case, plaintiffs' claims could not have accrued at least until the time that they terminated their employment with Advest and the terms of the Plan unequivocally applied to them in a manner that resulted in the denial of their benefits, notwithstanding the fact that they did not make a formal claim for benefits. Under this standard, plaintiffs' claims are clearly timely. Nevertheless, defendants seek to go well beyond any recognized application of the "clear repudiation" standard, arguing that when a claim involves "the design of the plan itself, rather than asserting a claim for benefits under terms of the plan, the statute of limitations runs from the date the design was communicated to plan participants." (Doc. 74, Def. Mem. at 5). Defendants' position is unsupported by applicable case law.

For example, in *Meagher v. IAM Pension Plan*, 856 F. 2d 1418 (9th Cir. 1988), the plaintiff alleged that the plan sponsor had amended a pension plan to eliminate a benefit escalation provision (known as the living pension feature) after he had retired. The plaintiff challenged the amendment on the grounds that it violated ERISA's anti-cutback rule.[4] The district court concluded that the plaintiff's cause of action accrued either when the amendment was adopted or when the plaintiff learned of the amendment, and was, thus, barred under the applicable limitations period. *Id.* at 1422. The Ninth Circuit, however, reversed holding that in a case involving the full or partial forfeiture of an accrued retirement benefit, the participant normally does not suffer such forfeiture until the disputed provision is applied. *Id.* (noting that only at the time of application of the provision are the benefits *decreased*). Accordingly, the plaintiff's claim for benefits,

---

[4] Under ERISA's anti-cutback rule, a plan sponsor may not reduce via amendment a vested benefit without meeting certain criteria. 29 U.S.C. § 1054(g)(1).

which was based on a challenge to the design of a plan provision, did not accrue until the plan applied the provision to the plaintiff's accrued benefits. *Id.* at 1422.

Similarly, in *Romero*, one of the cases cited by defendants, the Third Circuit agreed with the *Meagher* court's conclusion and held that a claim for benefits based on a violation of ERISA's anti-cutback rule did not generally accrue until the disputed provision was applied to the plaintiffs and the plaintiffs learned of its effect on their benefits. Thus, the *Romero* court refused to find that the statute of limitations accrued based on the terms of an amendment where "the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event."

In *Devito v. Pension Plan of Local 819 IBT Pension Fund*, 975 F. Supp. 2d 258 (S.D.N.Y 1997), the plaintiff brought an action alleging that the provisions of her pension plan violated ERISA by imposing a "non-ratable" social security offset, which unlawfully reduced the amount of the plaintiff's benefits. The defendants argued that the statute of limitations on the plaintiff's claim began to run from the time that the allegedly unlawful provision was added to the plan. *Id.* at 264. As a result, defendants argued the plaintiff's claim was untimely. *Id.* Applying the Second Circuit's "clear repudiation" standard, the court rejected defendants' argument and held that the limitations period on the plaintiffs did not commence until the plan had both adversely applied the challenged provision to decrease the plaintiffs' benefits and confirmed its calculation of benefits over the plaintiffs' objection. *Id.* The court reached this conclusion even though the challenged provision had been in place for 14 years and the plaintiff had been receiving benefits under the plan for nine years before the case was brought.[5]

---

[5] According to the district court in *Dunnigan v. Metropolitan* Life, 99 F. Supp. 2d 307, 320 (S.D.N.Y. 2000), *Strom v. Goldman Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) abrogated the *Devito* opinion on the

As such cases as *Meagher*, *Romero*, and *Devito*, make clear there cannot be a clear repudiation of rights under ERISA at least until the provision alleged to be unlawful is applied to the plaintiff in a manner that adversely affects them. In this case, even assuming, *arguendo*, that plaintiffs fully understood the vesting and forfeiture terms of the AE Plan, until the time that they terminated their employment with Advest, there was no way for them to have known whether these provisions would ever be applied to them in a manner that would result in their benefits being denied.[6] To the contrary, there were multiple circumstances under which plaintiffs could have received their full benefits under the terms of the Plan, notwithstanding its violations of ERISA. First, had plaintiffs continued to work at Advest until their retirement, they would have received their benefits. (¶ 44). Second, if plaintiffs had died or become disabled they, or their beneficiaries, would have been entitled to their benefits, even if they had participated in the Plan for less than 10 years. (¶ 45). Third, prior to the time that Merrill Lynch agreed to acquire Advest and amended the Plan, AE Plan participants would be allowed to leave Advest and go to work for a competitor without forfeiting any of their benefits if they left during a prescribed period of time. (¶ 19). Under any of these conditions, plaintiffs could have received the full amount of their accrued benefits notwithstanding the Plan's violations of ERISA.

---

issue of whether interest is recoverable under Section 502(a)(3). *Devito* held that such payments were not recoverable. The court in *Strom* held that such payments could be recovered. The Second Circuit in *Dunnigan v. Metropolitan Life*, 277 F. 3d 223 (2d Cir. 2002) affirmed the holding by the district court that interest on delayed payment were recovered under Section 502(a)(3) but remand so that the district court could reconsider its denial of class certification.

[6] It should be noted that the record raises significant disputed issues of material fact as to whether plaintiffs understood the terms of the Plan. For example, Mr. Fisher testified that he *did not* understand the significance of the terms used in the summary of benefits he received or that there was a 10 year vesting schedule. (¶ 35; Doc. 75, Fisher Tr. 44:15-19; 48:23-49:15). Further, there is no evidence in the record that plaintiffs were ever given a copy of the Plan and it is undisputed that defendants failed to distribute an SPD within the definition of ERISA. (¶ 37).

Considering the foregoing, defendants are unable to demonstrate that plaintiffs understood that the terms of the AE Plan would result in their benefits being forfeited prior to the time that they terminated their employment at Advest. In this regard, there is no indication that either Mr. Fisher or Mr. Fenwick had any plans to leave the Company at any point prior to 2005. To the contrary, Mr. Fisher testified that he loved working at Advest and planned to work there for the rest of his life. (¶ 46). Further, Mr. Fisher testified that he did not considering leaving Advest until after an announcement had been made that the Company would be acquired by Merrill Lynch. (¶ 47, Fisher Tr. 37:3-14). Similarly, Mr. Fenwick testified that he did not consider leaving Advest until he learned that the Company was going to be purchased by Merrill Lynch. (¶ 49, Fenwick Tr. 29:22-30:5).[7] Accordingly, prior to the changes that took place at Advest in 2005, plaintiffs did not know that the unlawful vesting provisions of the AE Plan at issue in this case would be applied to them in a manner to that would result in their benefits being forfeited. Defendants' argument that the statute of limitations on plaintiffs' claims accrued before they had such knowledge should be rejected by this Court, as it goes well beyond any case that has addressed the requirements of the "clear repudiation" standard.

Indeed, the untenable nature of defendants' position is illustrated by consideration of the practical implications its adoption would have. Applying defendants' logic, in order to prevent their claims from being time barred, plaintiffs would have needed to have brought suit no later than 2004. (Doc. 74, Def. Mem. at 8). As noted above, however, at that time plaintiffs were gainfully employed at Advest and were participants in the AE Plan accruing benefits under the terms of the Plan without having any way of

---

[7] Mr. Fisher further testified that he did not became aware that Advest was taking the position that his benefits had been forfeited until sometime in late February or early March of 2006. Fisher Tr. at 27:6-16.

knowing that events would transpire in such a way that those terms would result in plaintiffs' benefits being forfeited.    Requiring plaintiffs to file suit under these circumstances, years *before* a dispute over benefits had ripened, would, in effect, mandate that plan participants serve as watchdogs over any potential ERISA violations. Such a requirement is at odds with ERISA's underlying purpose of protecting employee retirement benefits. *See generally*, *Boggs v. Boggs*, 520 U.S. 833, 845 (1997) (noting that ERISA's principal object is to protect plan participants and beneficiaries); *Central Laborers' Pension und v. Heinz*, 541 U.S. 739, 743 (2004)(noting that "there is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them").

Once again, the *Romero* opinion cited by defendants is instructive.  In that case, the court rejected an accrual rule that:

> would have the undesirable effect of requiring plan participants and beneficiaries 'likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential plan errors and abuses.' . . . Additionally, it would impose an unfair duty of clairvoyance on employees, such as those in this case, who allege that an amendment's detrimental effect on them was triggered not at the time of adoption, but rather at some later time by a subsequent event.  *Id*. at 224 (ellipsis added and internal citations omitted).

Under *Romero*, it is clear that the accrual date should run from the date plaintiffs knew that their accrued retirement benefits would be forfeited and not on the date they received a copy of a document describing some of the plan's terms, as defendants' suggest.   When plaintiffs became participants, they did not know that at some future date their accrued benefits would be forfeited.  The detrimental effect of the Plan's forfeiture provisions on them was trigged not at the time they joined the Plan "but rather at some later time by a

subsequent event."   It was only after the December 2005 Merrill Lynch acquisition of Advest that plaintiffs had cause to question the application of the Plan's forfeiture provisions to their situation.[8]   Plaintiffs proceeded to file suit a little more than six months after Merrill Lynch's acquisition of Advest.[9]   Under the circumstances, plaintiffs' claims are timely.

None of the other cases cited by defendants alter this conclusion.   For example, in *Union Pacific Railroad Co. v. Beckham*, 138 F.3d 325 (8th Cir. 1998), the plaintiffs unequivocally were informed that certain of their service time would not be used to determine "credit service," which formed the basis of their benefit accruals. Accordingly, future events could not result in the avoidance of harm – plaintiffs would be denied benefits for certain years of service they had provided when they made an application for benefits no matter what they did.   Similarly, in *Carey v. International Broth. Of Electrical Workers*, 201 F.3d 44 (2nd Cir. 1999), the Court held that the statute of limitations began to run after plaintiff had been informed in writing that he was not entitled to pension benefits, and lost his appeal of this determination.   The Second Circuit reasoned that the statute of limitations did not accrue upon the formal application for benefits because nothing had changed between the first appeal and the subsequent denial of a "formal" application.[10]

---

[8] Mr. Fenwick testified that prior to his departure from Advest in December 2005,  he, and in his opinion, other participants had no reason to question the operation of the Plan because they trusted that the Company knew what it was doing.  (¶ 74).

[9] According to defendants, the actual forfeiture of plaintiffs' and class members' retirement benefits occurred on June 30, 2007.  (Doc. 75, Dittes Decl. ¶ 5).  That is the date is when Mr. Dittes gave the instructions to distribute accrued benefits in a lump sum to all remaining vested participants. (Doc. 75, ¶ 5). Plaintiffs and class members did not receive a lump sum amount of their accrued benefits.

[10] Several cites that defendants include are entirely irrelevant. In *Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888 (1st Cir. 1978), the Court held that plaintiff failed to establish his entitlement to participate in the ERISA Plan he was challenging as he terminated his employment with defendant in 1974, prior to the adoption of the challenged Plan, and prior to the effective date of ERISA.  In *Stack v. Am. Med.*

The accrual standard that defendants advocate is particularly unwarranted considering that they have consistently taken the position that the AE Plan was a "top-hat" plan that was allowed to impose forfeiture provisions that are otherwise unlawful under ERISA. Accordingly, defendants take the position that plaintiffs were required to bring a preemptive challenge to not only the improper vesting terms of the AE Plan, but also to whether it actually meets the requirements of a top-hat plan. In this regard, defendants have never communicated any information to plaintiffs indicating that they repudiated their assertion that the AE Plan was limited to a select group of highly compensated account executives, a position that they continue to advocate today. Nevertheless, defendants suggest that plaintiffs were required on their own to determine whether information purportedly in their possession was sufficient to bring a claim challenging the top-hat status of the AE Plan or risk having any future claim for benefits be time barred.[11]

Such a position would require plaintiffs to have detailed knowledge of the technical workings of ERISA that courts have explicitly rejected and is contrary to the protective purposes of ERISA. *See Romero*, 404 F. 3d at 224, *Devito*, 975 F. Supp. at 265. Most plan participants could not tell you what the acronym ERISA stands for, let alone be expected to understand whether a plan nominally designated as a top hat plan is, in fact, a top hat plan. The reality is that plaintiffs had no cause to consider whether or not the AE Plan was a top hat plan or whether the vesting and forfeiture provisions had

---

*Int'l Inc.,* 2005 WL 661934 (D. Neb. March 21, 2005), the Court held that plaintiffs had raised genuine issues of fact with respect to when plaintiffs knew or should have known that their benefits had been repudiated. The case says nothing about how this determination was to be made. Finally, *Ziegler v. Connecticut General Life Ins. Co.,* 916 F.2d 548, 551 (9th Cir. 1990), involved only a claim for breach of fiduciary duty brought by a plan administrator and not a claim for benefits brought by the plan participant.

[11] As set forth below, defendants have failed to demonstrate that plaintiffs had "actual knowledge" of information necessary to determine that the AE Plan was not a top-hat plan.

actually been applied to them and they consulted an attorney to determine whether they had been wrongfully denied their benefits.  This reality further demonstrates why the statute of limitations on plaintiffs' claim for benefits could not have begun to run any earlier than the time that they terminated their employment at Advest and became subject to the forfeiture provisions that resulted in their benefits being denied.

> 2.   <u>Defendants have failed to show that plaintiffs had actual knowledge of the alleged breached such that ERISA's three limitations period bars the Section 502 (a)(3) claim.</u>

A Section 502(a)(3) claim premised on a breach of fiduciary duty is governed by ERISA's statute of limitations for claims asserted against fiduciaries. ERISA provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's       breach of any responsibility or obligation under this part or with respect to a violation of this part after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in case   of an omission the latest date on which the fiduciary could have cured the breach of violation or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.
>
> 29 U.S.C. § 1113.

Defendants mischaracterize plaintiffs' breach of fiduciary duty claim as only involving an allegation of affirmative misconduct by applying unlawful provisions of the Plan to forfeit plaintiffs' retirement benefits. (Doc. 74, p. 6).   However, the Amended Complaint also alleges that the Plan fiduciaries failed to correct the Plan's substantive violations.   (Doc. 36, See Amended Complaint at ¶ 59). Thus, plaintiffs allege both acts

and omissions as violating fiduciary obligations. The importance of this distinction is that, as noted above, the six year period for claims against fiduciaries runs either from the date of the last action that constituted part of the breach or the last date the breach could have been cured. *See, Reich v. Johnson*, 891 F. Supp. 208 (D.N.J. 1995) (noting that claim that fiduciaries failed to monitor investments and divest the plan of certain assets accrued on the last date the fiduciaries could have cured the breach (i.e. divest the plan of assets)); *see also, Wilson Land Corp. v. Smith Barney*, 1999 WL 1939270 (E.D.N.C). In the case at bar, the last date to cure the breach was clearly on June 30, 2007, the date Mr. Dittes and the Plan fiduciaries authorized lump sum payments to certain participants. (Doc. 75, *See*, Dittes Declaration ¶ 5).

Moreover, it is undisputed that the AE Plan continued to operate well after the filing of the initial complaint in June of 2006 and, arguably, has not yet terminated. Even though, as plaintiffs allege, defendants knew or had reason to know that the Plan was not exempt under ERISA's top hat provision, they still authorized the application of the Plan's forfeiture provisions and directed the non-payment of benefits to the plaintiffs and class members. (Doc. 75, Dittes Decl. ¶ 5). Thus, defendants failed to ensure compliance with ERISA's substantive provisions, allowed the forfeiture of retirement benefits in violation of ERISA and failed to cure the continued violations when they had an opportunity to do so in June 2007. (Doc. 36, Amended Complaint ¶ 58-59). These acts and omissions clearly occurred within six years of the filing of the complaint. *See, LaScala v. Scrufari*, 479 F. 3d 213 n.1 (2d Cir. 2007) (noting that because some of the fiduciary breaches undisputedly occurred within the six year period, claims for breaches outside the six year window were timely under Section 413(1)).

Recognizing that plaintiffs' fiduciary breach claims asserted under the acts or omission provisions of Section 413 are timely asserted, defendants have instead decided to focus on the "actual knowledge" prong. Defendants' argument that since at least 1998 both plaintiffs had "actual knowledge" of the breach of fiduciary duty is based entirely on three meager "facts." These three facts are (1) plaintiffs knew at the time they became participants that the vesting schedule was 10 years, (2) that it was "easy" to meet the eligibility criteria and (3) that they did not receive a summary plan description. (Doc. 74, Defs. Mem. at 7-8). Under the "actual knowledge" standard, these "facts" are clearly insufficient to entitle defendants to judgment as a matter of law.

The "actual knowledge" standard is much more demanding and rigorous than defendants are willing to admit. In *Stavola v. Northeast Utilities*, 453 F. Supp. 2d 584, 590 (D. Conn. 2006), the Court described the "actual knowledge" standard articulated in *Caputo v. Pfizer*, 267 F.3d 181, 193 (2d Cir. 2001) in the following manner:

> [a] plaintiff has actual knowledge of the breach or violation within the meaning of ERISA § 413 (2), 29 U.S.C. § 1113(2), when he [or she] has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act . . . . While a plaintiff need not have knowledge of the relevant law . . . [he or she] must have knowledge of all facts necessary to constitute a claim. Such material facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences or even actual harm. However, the disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach." (citing *Caputo*, 267 F. 3d at 193)(ellipsis in original).

The court in *Stavola* also noted that under *Caputo* and its progeny, the actual knowledge standard is a subjective one and that "constructive knowledge, *i.e.* that the plaintiff *should* have known, is insufficient." 453 F. Supp. 2d at 590 (emphasis in

original).[12]  Finally, the *Stavola* court concluded that under Second Circuit precedent, the defendant must show not only that the plaintiff knew that the relevant events occurred "but also that those events supported a claim for breach of fiduciary duty or violation of ERISA." *Id*.[13]

In *Stavola*, the plaintiff retired from employment with Northern Utilities (NU) in February 1991.  At the time of her retirement, she was not told that NU planned on implementing a special retirement program later that year.  In March 1996 she saw an announcement directed at any employee who had "missed out" on NU's 1991 special retirement program. *Id*. at 587.  Shortly after seeing the announcement, the plaintiff wrote to NU's chief administrative officer asking whether she would have qualified for the early retirement program. *Id*.  In April 1996, NU's representative wrote back stating that no decision about the special retirement program had been made until much later in 1991. *Id*.

Plaintiff then read a newspaper story in September 1996 about a lawsuit filed against NU by dozens of retirees who claimed they were misled into retiring before the special retirement program was implemented. *Id*.  The article provided a detailed description of the allegations that NU had withheld information from employees who were near retirement age and the claim that under ERISA, the company was obligated to

---

[12] The Second Circuit in *LaScala v. Scrufari*, 479 F. 3d 213, n. 1 (2d Cir. 2007) also reaffirmed that "constructive knowledge" is insufficient.

[13] In *Broga v. Northeast Utilities*, 315 F. Supp. 212, 221 (D. Conn. 2004)(a case related to *Stavola*), the district court explained in detail the holding in *Caputo*.  In *Caputo* the plaintiffs claimed that defendant had misled them into retiring rather than wait for an early retirement buyout.  The defendant had denied any plans for such a buy-out program.  The district court found that the statute of limitations commenced when the plaintiffs learned about the early retirement program.  The Second Circuit reversed and held that the statute of limitations did not accrue until the plaintiff's learned through trial testimony in a related ERISA case that the defendant had misrepresented its future plans with respect to an early retirement plan. "Notably, the court specifically rejected the district court's analysis that the release of an early retirement program alone could provide enough information to a plaintiff to constitute actual knowledge: 'the disclosure of a transaction that is not inherently a statutory breach of fiduciary duty  . . . cannot communicate the existence of an underlying breach.'" 315 F. Supp. 2d at 221.

disclose whether an early retirement plan was being prepared. *Id.* Around the same time the article was published, plaintiff received a letter from the attorney representing the NU retirees. *Id.* The letter informed the plaintiff that under federal law she may have the right to recover benefits provided under the special retirement plan. *Id.* at 588. Plaintiff also completed a questionnaire about her communications with the company shortly before her retirement. *Id.*

Several years later, plaintiff read an article in April 2004 describing the verdict against NU for violation of ERISA's fiduciary obligations. *Id.* The article indicated that Judge Squatrito had found that NU deliberately withheld information from retirees about its plans to offer an enhanced retirement package. *Id.* The plaintiff then contacted the lawyer for the retirees and sued in June 2005 for breach of fiduciary duty. *Id.*

The court rejected NU's argument that plaintiff had "actual knowledge" of the breach more than three years before filing suit. *Id.* According to the court, the following facts were insufficient under *Caputo* and it progeny to establish actual knowledge of the breach: (1) plaintiff had read an article about the lawsuit in 1996; (2) the plaintiff had received a letter from a lawyer describing her rights under ERISA to disclosure of the program; (3) the plaintiff testified that after she read the article in 1996 she doubted the written statements made by the NU representative. Rather, it was only when plaintiff read the April 2004 article that described Judge Squatrito's findings that plaintiff was found to actually know that NU had deliberately withheld information about the special early retirement program. *Id.*

When measured under this "actual knowledge" standard, defendants "facts" are unquestionably inadequate to establish that plaintiffs had "actual knowledge" that the

Plan failed to meet the "top hat" exemption.  To the contrary, the record establishes, among other things, that:

- The documents that defendants refer to which purportedly put plaintiffs on notice of the vesting terms of AE Plan refer to it as an "Exclusive Benefits Plan" which was "for Advest's top financial advisors." (¶ 54).

- Plaintiffs were not provided with a copy of the AE Plan, nor were they given any detailed information regarding the Plan.  (¶¶ 61, 64)

- There is no indication that defendants provided plaintiffs with any information regarding the number of Advest employees or the number of participants in the AE Plan.  To the contrary, Mr. Fenwick testified that he did not have a general understanding of the number of employees at Advest.  (¶ 56).  Further, Mr. Fisher worked at a very small office of Advest that only had 3 brokers. (¶ 57).

- Neither plaintiff had an understanding of what the requirements are for a top hat plan.  Specifically, Mr. Fenwick testified that he did not know what the criteria was for a plan to be considered a top-hat plan.  (¶ 69).  Similarly, Mr. Fisher testified that he only "vaguely" understood what a top-hat plan was (¶ 69) and that he did not know whether the commission threshold of the AE Plan was limited to top financial advisors (¶ 69-70 Fisher Tr. 45:20-24).

Thus, Defendants have not established that plaintiffs had actual knowledge of the Plan's participation rates relative to total employee complement, the compensation of all plan participants and the duties of each of the plan participants.  Most importantly, the defendants failed to show the plaintiffs had "actual knowledge" that the Plan was not a top hat plan.  Indeed, this fact (which is the key fact in plaintiffs' claim) was not established until earlier this year when the court in *Daft v. Advest*  2008 WL 190436 (N.D. Ohio), ruled that the AE Plan was not a top hat plan.

Furthermore, determining whether a plan qualifies as a top hat plan is not the type of fact that a plan participant would reasonably be expected to actually know until consulting with an expert.  Defendants have not shown that three years prior to filing suit, either plaintiff consulted with an expert and learned that the Plan was not a top hat plan.

As noted above, the *Caputo* decision clearly contemplates that in some ERISA cases, plaintiffs will not have "actual knowledge" of a breach until the plaintiff has consulted with an expert or learned of an experts' opinion.

Finally, in this case, the determination of whether or not the AE Plan is a top hat plan will dictate the outcome of whether defendants breached their fiduciary duties. If it is determined that the Plan is a top hat plan, as they contend, then the forfeiture provisions (including the 10 year vesting schedule) and failure to provide an SPD are lawful. As the *Caputo* court cautioned, transactions that are not inherently violations of ERISA's fiduciary obligations (i.e. transactions that are on their face fiduciary breaches like stealing money from a plan) cannot communicate the existence of an underlying breach. 267 F. 3d at 193. Thus, the mere fact that plaintiffs may have received documents indicating there was a 10 vesting schedule and that they did not receive an SPD, cannot give rise to the conclusion that plaintiffs had "actual knowledge" that defendants had breached fiduciary duties owed under ERISA. For all the reasons noted above, the Court should find that the plaintiffs' Section 502(a)(3) claim premised on breach of fiduciary duty was timely filed.

> **B.    Defendants incorrectly assert that ERISA provides no remedy for the forfeiture of their accrued retirement benefits. First, plaintiffs properly seek benefits under the enforceable provisions of the AE Plan. Second, the Court should reject defendants' narrow reading of Section 502(a)(1)(B) because it is inconsistent with ERISA's underlying purpose. Third, plaintiffs have injunctive and equitable remedies available under 502(a)(3) to remedy both the statutory and fiduciary breaches, notwithstanding that the disputed contention that the Plan was terminated more than a year <u>after</u> suit was filed. Finally, defendants ignore plaintiffs' claim for relief under Section 502(a)(2).**

Defendants argue that plaintiffs do not have a remedy at this time under ERISA's civil enforcement provision for the forfeiture of benefits. In *Varity Corp. v. Howe,* 516

U.S. 489 (1996),  the Court clearly indicated that unless there is some ERISA based reason for denying a remedy in the face of a violation, a court should award appropriate relief.   As argued below, ERISA's remedial scheme and cases interpreting its scope support plaintiffs' contention that the Court can and should order a remedy.

1.   The terms of the Plan specifically provide that provisions found to be unlawful will not be enforced and will be deemed to not have been included.   Thus, plaintiffs have stated a valid claim under Section 502(a)(1)(B).

Defendants erroneously argue that plaintiffs are not entitled to relief under Section 502(a)(1)(B) because they purportedly have conceded that they are not due any benefits under the terms of the AE Plan.  (Doc. 74, Def. Mem. at 9-10).  Plaintiffs have not made such a concession.  Rather, plaintiffs allege that certain terms used to forfeit the benefits they accrued under the Plan are unlawful and thus unenforceable. (*E.g.*, Doc. 36, Amended Complaint ¶ 54).  Plaintiffs, therefore, seek benefits under the terms of the AE Plan once the unenforceable terms of the Plan have been excised.  Explicit provisions of the AE Plan allow for such an outcome.

Specifically, Section 8.7 of the AE Plan provides that "if any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof and *the Plan shall be construed and enforced as if such provisions, to the extent invalid or unenforceable, had not been included.*"    (¶42) (emphasis added) Under a plain reading of this language, any provision or parts thereof that are found invalid or unenforceable, shall be treated as not having been included in the Plan.  Among other things, plaintiffs contend that the requirement Section 3.1 of the Plan, is unenforceable because it effectively imposes a 10 year vesting schedule in violation of ERISA.  Similarly, plaintiffs contend  that the entirety of Section 3.4 of the

Plan is unenforceable for the same reason, namely, it imposes forfeiture provisions and allows reduction in benefits that are inconsistent with sections of 29 U.S.C. §§ 1053 and 1054. According to the AE Plan, if these provisions are held to be unlawful, plaintiffs are entitled to enforce their rights to benefits under the Plan as if the unlawful provisions never existed.

Because the AE Plan, as written, provides for the possibility that certain provisions may be invalid or unenforceable, plaintiffs' claim that the Plan should award them benefits without regard to certain forfeiture provisions clearly seeks benefits under the terms of the Plan.

2.    Defendants incorrectly assert that participants lack a claim for benefits when they allege that the terms of the Plan used to deprive them of benefits violate ERISA's substantive provisions.

Because plaintiffs do, in fact, seek benefits under the enforceable terms of the AE Plan, the Court need not reach defendants' argument that a participant cannot bring a claim under Section 502(a)(1)(B) based solely on an alleged statutory violation of ERISA. In the event that the Court does wish to address this issue, however, it should reject defendants' argument, as it is based on a narrow and overly restrictive reading of Section 502(a)(1)(B) that has been expressly rejected by several circuit court opinions and has not been adopted in the Second Circuit.

As defendants acknowledge, the Sixth Circuit in *West v. AK Steel*, 484 F. 3d 395, 405 (6th Cir. 2007), has rejected the conclusion that a claim for benefits under 502(a)(1)(B) may not be predicated on a plan's violation of the substantive requirements of ERISA. In *West v. AK Steel*, the plaintiffs challenged the method that a cash balance plan used to calculate lump sum distributions. Although the formula used for calculating

the lump sum benefit was consistent with the terms of the plan, it violated ERISA's anti-cutback rule and impermissibly reduced the plaintiff's accrued benefits.   Similar to defendants' argument here, the defendant in *AK Steel* argued that plaintiff lacked a Section 502(a)(1)(B) claim for benefits because the terms of the plan called for the challenged calculation. *Id.* at 404. The Sixth Circuit rejected this argument because it placed the participant seeking the forfeited benefits in an untenable position of conceding the correctness of the calculation notwithstanding its violation of substantive ERISA provisions. *Id.* at 404.[14]

In *AK Steel* the court concluded that the plaintiff could assert a claim for reduced benefits under Section 502(a)(1)(B) when the reduction results from the application of a provision that violates the substantive requirements of ERISA.  *Id.* at 405.  The court acknowledged that Section 502(a)(1)(B) offers redress only for the recovery of benefits, enforcement of rights, or clarification of rights to future benefits under the terms of the plan. *Id.*  However, the terms of the plan must comply with ERISA and if terms that do not comply are used to deprive a participant of an accrued benefit, then the participant has a claim for benefits under Section 502(a)(1)(B).  *Id.*[15]

---

[14] In *Page v. PBGC* 968 F. 2d 1310,  (D.C. Cir. 1992), Judge Ruth Bader Ginsburg rejected a similar argument advanced by the PBGC.  The Pension Benefit Guaranty Corporation is a government established entity that insures pension plans.  The statute requires the PBGC to insure any nonforfeitable benefit under the terms of the plan.  In Page, the employer terminated the plan without having amended the vesting provisions to reflect ERISA's limitations.  The plaintiffs did not vest under the terms of the plan but would have vested had the plan incorporated ERISA's substantive provisions.  The *Page* court rejected the PBGC's argument that it did not have to provide the plaintiffs with benefits because "under the terms of the plan" their accrued benefits were forfeited.  The court found that the phrase "under the terms of the plan" could include benefits owed as a result of implied statutory terms.  The opinion in *Page* is instructive on how to interpret the substantially similar language that appears in Section 502(a)(1)(B).

[15] The Seventh Circuit also agrees with the Sixth Circuit and permits a claim for benefits under Section 502(a)(1)(B) that is based on violations of ERISA's substantive terms. *See, Berger v. Xerox Corp. Ret. Income Gaur. Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (permitting ERISA statutory claim to be asserted under Section 502(a)(1)(B)).  In *May Dep't Stores Co v. Federal Ins. Co.*, 305 F. 3d 567, 601, 602 (7th Cir. 2002), the court found that a claim for benefits based on the theory that the plan violated an ERISA

The court in *AK* Steel found support for its conclusion in *Edson v. Bank of Boston*, 229 F. 3d 154, 161-162 (2d Cir. 2000), a factually similar case where the plaintiffs brought suit under Section 502(a)(1)(B) and 502 (a)(3). *Id*. at 162.    Though not specifically stating that Section 502(a)(1)(B) is appropriate for a benefits claim based on a statutory violation, the Second Circuit soundly rejected the defendant's argument that plaintiffs had received all the benefits they were entitled to under the terms of the plan. *Id*. As the *Edson* court held, an employer cannot contract around ERISA's substantive provisions and a covered benefit plan must comply with all substantive ERISA requirements. 229 F. 3d at 173. The court also rejected the argument that the plan did not cause the plaintiff's forfeiture because she had elected to forfeit her benefits when she chose a lump sum option and the Plan did not cause the forfeiture.  The court held that under ERISA "a participant may not elect a forfeiture", notwithstanding the Plan's terms. *Id*. [16]

Similarly, in *Frommert v. Conkright*, 443 F. 3d 254 (2d Cir. 2006), the plaintiffs challenged the application of an amendment that reduced their accrued benefits in violation of ERISA's anti-cutback rule and anti-forfeiture provisions and asserted a claim under Section 502(a)(1)(B).  *Id*. at 257.  The district court dismissed plaintiffs' claim largely on the grounds that the challenged provision (known as a "phantom account")

---

substantive provision was a claim under the terms of the plan because the pension plan contains terms "implied by law" under ERISA.

[16] The view that ERISA adds mandatory terms to every deferred compensation plan and thus a claim for benefits premised on such terms falls under the scope of Section 502(a)(1)(B) finds further support in *Central Labor's Pension Fund v. Heinz*, 541 U.S. 739, 750, (2004). *Heinz* involved a claim that the plan's terms violated ERISA's anti-forfeiture provisions. Agreeing with plaintiff's position, the Court noted that ERISA's nonforfeiture directive is an implied term in every covered pension plan:

Section 203(a), 29 U.S.C. § 1053(a) reads that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." This is a global directive that regulates the substantive content of pension plans; it adds a mandatory term to all retirement packages that a company might offer.

complied with ERISA's substantive provisions.  The Second Circuit reversed and framed the issue as follows: "The central issue in this appeal is whether the manner in which the defendants instituted a "phantom account" offset . . . violates ERISA." *Id*. at 256 (ellipsis added)

The Second Circuit agreed with the plaintiffs that application of the "phantom account" provision to them violated ERISA's anti-cutback rule.  Among other things, the court found that the phantom account provision violated the anti-cutback rule because the provision (though added to the plan in April 1990) was not clearly explained and properly noticed until the plan was restated in 1998.  The Second Circuit found that Xerox had not complied with the amendment provisions found in § 204(h) until the 1998 restatement and thus, ERISA's substantive provisions (i.e. the anti-cutback rule) precluded the application of the phantom account calculation method to pre-1998 rehires. Significantly, the Second Circuit in *Frommert* characterized plaintiffs' claim for benefits based on the illegality of certain plan provisions as a Section 502(a)(1)(B) claim for benefits under the terms of the Plan. *Id*. at 270.   As in *Edson*, the Second Circuit in *Frommert* did not parse the language of Section 502(a)(1)(B) in the manner defendants in this case advocate. Instead, in both *Edson*  and *Frommert*, the Second Circuit viewed challenges to the legality of plan provisions that deprived participants of benefits they would have otherwise received as valid Section 502(a)(1)(B) claims.

Notwithstanding the forgoing, defendants contend that the Second Circuit would likely adopt their restrictive interpretation of Section 502(a)(1)(B), citing *Strom v. Goldman, Sachs & Co.* 202 F. 3d 138 (2d Cir. 1999).  Defendants' reliance on *Strom* is

misplaced, as the case is readily distinguishable from the case at bar.[17]  In *Strom* plaintiff alleged that her claim for full benefits under her deceased husband's group life insurance policy was denied because the employer mishandled her husband's application for coverage.  The district court concluded that plaintiff did not have a claim under Section 502(a)(1)(B) because the policy stated that coverage was effective only upon approval of the application.  *Id*. at 141.  The Second Circuit affirmed the dismissal of the Section 502(a)(1)(B) claim because the decedant's full coverage had not become effective prior to his death as required by the plan.  *Id*.

Defendants' reliance on *Strom* is unavailing as the case did not involve a claim for benefits where the participant challenged the plan's compliance with ERISA's substantive provisions.  The plaintiff in *Strom* did not dispute that the coverage provisions complied with ERISA.[18]  In fact, her only argument was that the employer unreasonably denied processing her late husband's application for coverage.  Under such a scenario, it is not surprising that both the district and circuit courts reached the conclusion that the plaintiff did not have a Section 502(a)(1)(B) claim.[19]

---

[17] As argued below, *Strom* supports plaintiffs' alternative claim for relief under Section 502(a)(3) because it holds that recovering benefits under a plan that had been denied as a result of a fiduciary breach constitutes "appropriate equitable" relief. 202 F. 3d at 150.

[18] Similarly distinguishable is *Strohmeyer v. Metropolitan Life Ins. Co. et al.*, 2005 WL 3963770 (D. Conn. Nov. 15, 2005).  In *Strohmeyer*, this Court held that the plaintiff could not maintain an action for benefits pursuant to Section 1132(a)(1)(B) because she admitted that her husband was not covered under the life insurance policy she sought to recover under at the time of his death.  As in *Strom*, however, there was no allegation that any of the terms of the plan at issue violated ERISA.

[19] The district court also dismissed plaintiff's Section 502(a)(3)(B) claim because it characterized the claim as seeking damages from the employer for its alleged failure to act appropriately in having Strom's coverage become effective at the earliest date possible. *Id*. at 142.  The district court observed the benefits sought could not be characterized as "restitution" in the absence of an allegation of unjust enrichment. *Id*. The Second Circuit reversed the district court on the Section 502(a)(3)(B) claim because it characterized the payment of benefits as analogous to a "back pay" remedy.  More importantly, the court found no justification for denying a remedy, noting that it was not aware of any ERISA-related purpose that would be served by denying plaintiff a remedy. *Id*. at 149.

In short, the Second Circuit decisions most analogous to this case adopt an interpretation of ERISA's that fits best with the plaintiffs' interpretation of Section 502(a)(1)(B). The analysis in both *Edson* and *Frommert* strongly suggest that the Second Circuit would allow a claim for benefits based on a plan's violation of ERISA's substantive requirements. The cases that defendants rely on from other circuits do not alter this conclusion because they are either factually distinguishable or contradicted by more persuasive and relevant authority.

For example, in *Eichorn v. AT&T Corp.* 484 F. 3d 644 (3rd Cir. 2007), the court was faced with the issue of whether Section 502(a)(1)(B) provided a remedy for a violation of Section 510, which prohibits an employer from disciplining or discriminating against an employee for exercising any ERISA protected right. The plaintiffs complained that the employer refused to rehire them in order to prevent them from bridging pension service. The court concluded that Section 502(a)(1)(B) was not appropriate because the dispute was over conduct to preclude eligibility and not whether benefits were wrongfully deprived.

In *Anderson v. Consolidated Rail Corp*, 297 F. 3d 242 (3rd Cir. 2007), the plaintiffs complained that the defendants laid them off because of their age and to prevent them from receiving benefits under a voluntary separation program (VSP). The court observed that plaintiffs conceded they were not eligible for VSP benefits because they were discharged prior to eligibility date. The court made the following observation about Section 502(a)(1)(B): "Thus, the plaintiffs are entitled to no benefits under the Plan. *Hein v. FDIC*, 88 F.3d 210, 215 (3d Cir.1996)(stating that only the Plan creates entitlement to benefits and thus, "we are required to enforce the Plan as written unless we can find a

provision of ERISA that contains a contrary directive") (quoting *Dade v. North Am. Philips Corp.*, 68 F.3d 1558, 1562 (3d Cir.1995)). The interesting point is that the cases *Anderson* cites, in particular *Hein*, implicitly support the plaintiffs' contention that Section 502(a)(1)(B) offers a remedy when the allegation involves a denial of benefits based on an illegal plan provision.[20]

The Eighth Circuit's opinion in *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F. 3d 735 (8th Cir. 2002), seemingly supports defendants interpretation of Section 502(a)(1)(B). The problem with *Ross* is that it assumes Section 502(a)(1)(B) only embodies a contract claim and the fiduciaries are strictly bound by the terms of the Plan.[21] However, in *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996), the Court observed that Section 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . and one that runs directly to the injured beneficiary." The breaches of fiduciary duty falling under Section 502(a)(1)(B) are not limited to interpretations of the plan because a fiduciary must also discharge his or her duties in accordance with plan documents and instruments "insofar as such documents and instruments are consistent with the provision of [title I] and title IV" of ERISA. 29 U.S.C. § 1104(a)(1)(D). If a plan term is inconsistent with ERISA's anti-forfeiture provisions then the fiduciary cannot give effect

---

[20] In *Hein v. FDIC*, 88 F. 3d 210 (3rd Cir. 1996), the court observed that the central issue was whether plaintiffs was entitled to an early retirement benefit because the fiduciaries interpretation of the plan reduced his accrued benefits in violation of ERISA Section 204(g). *Id.* 216-217. Thus, had the plaintiff prevailed on his Section 204(g) argument, he would have been entitled to relief under Section 502(a)(1)(B).
[21] To the extent the *Carrabba* court squarely considered this issue, its decision suffers from the same limitation. However, the district court's opinion in *Carrabba* did not delve into this issue because the Court had already decided to award relief under Section 502(a)(3). Even the *Ross* court recognized that in situations where the plaintiff alleges the illegality of a plan term, he or she may have to assert both Section 502(a)(1)(B) and Section 502(a)(3) claims to receive complete relief. 285 F. 3d at n. 7.

to such term but must rather apply ERISA's "mandatory terms." *See, Heinz*, 541 U.S. at 750 (*supra* n. 15).

3.   <u>Defendants incorrectly assert that plaintiffs lack a remedy for the alleged violations under Section 502(a)(3).  Plaintiffs are entitled to an injunction against defendants (including the Plan) that prohibit them from enforcing invalid provisions.  Also, reformation of the Plan (if necessary) can still be ordered assuming the Plan terminated and, finally, the a request for benefits cannot be deemed monetary damages.</u>

Defendants make two basic arguments for the proposition that Section 502(a)(3) also provides no relief: (1) the Court cannot order reformation of the Plan because the employer terminated the Plan and (2) any relief that results in the award of benefits constitutes monetary damages that are not available under the Supreme Court's holding in *Great West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).

Before addressing these arguments individually, it is important to understand defendants' logic to see where it will necessarily lead the Court.  Defendants argue that plaintiffs are not entitled to their accrued retirement benefits under the terms of the Plan because of the unlawful forfeiture provisions and that these very same forfeiture provisions preclude a claim under 502(a)(1)(B) for benefits.  Instead, defendants suggest that "statutory violations" are properly remedied under Section 502(a)(3).

However, defendants next argue there is no Section 502(a)(3) remedy for the statutory violations because the Plan has been terminated even though the termination occurred one year after this litigation commenced.  Further, defendants argue that the fiduciaries cannot be required to provide the wrongfully denied benefits because doing so amounts to an award of monetary damages. Thus, according to defendants, even if plaintiffs establish that the Plan violated mandatory ERISA protections and that

fiduciaries breached duties owed to participants, including unlawfully forfeiting plaintiffs and class members accrued retirement benefits, they avoid liability for the benefits under ERISA by merely terminating the plan. This interpretation turns ERISA's protective mandate on its head. Defendants cannot and have not articulated an ERISA-based reason for depriving plaintiffs and similarly situated class members a remedy, as demonstrated below.

    (a)    <u>The AE Plan has not automatically terminated as defendants contend. However, assuming termination of the plan occurred after the filing of this suit, such event does not deprive the court of the power to enjoin further violations or to reinstate the Plan and reform its provisions.</u>

Defendants contend that plaintiffs' concede that the AE Plan terminated. However, plaintiffs' Amended Complaint does not include an allegation that the AE Plan has terminated. Rather, the Amended Complaint simply notes that the Plan was amended in 2005 and that amendment allowed for the termination of the Plan. (Doc. 36, Amended Complaint, ¶ 47). Further, the Plan language defendants identify in their Local Rule 56(a)(1) Statement as supporting the termination argument provides that the Plan "shall terminate automatically when there shall be no Participants and no claims to Benefits hereunder." (¶¶ 21, 41). Because plaintiffs in this case and in the *Daft v. Advest* litigation are claiming benefits under the Plan, the automatic termination provision is inapplicable. Further, if the Plan terminated as defendants' contend, then the Company's Board of Directors must have taken such action. As the record currently stands, there is no evidence that the Board of Directors terminated the Plan.

Assuming that the Plan actually terminated on June 30, 2007, defendants contend that such termination effectively moots plaintiffs' request for certain equitable relief. (Doc. 74, p. 12). The power to terminate a pension plan, however, is not unlimited, nor

can it be misused to avoid accrued liabilities. Furthermore, the mere act of termination does mean that the plan is non-existent for all purposes. Courts that have considered the argument that no remedial relief is available once a plan is terminated have rejected this position as being untenable.[22]

For example, in *Jackson v. Trucker Drivers' Union Local 42 Health and Welfare Fund,* 933 F. Supp. 1124 (D. Mass. 1996), the plaintiff sued plan fiduciaries for imprudent decisions that ultimately resulted in a merger and termination of the health insurance plan. *Id.* at 1112. The defendants argued, among other things, that the plaintiff could not sue the plan under Section 502(a)(2) because there was no longer a plan.[23] The district court rejected this position because followed to "it's logical endpoint, the argument would hold that fiduciaries whose breach renders a plan insolvent and thus cause it to terminate immunize themselves from ERISA liability." *Id.* at 1136. The district court observed that such an outcome is inconsistent with ERISA's remedial purpose, noting that ERISA was designed to "fashion anodynes that protect the interests of plan participants and beneficiaries." *Id.*

The district court instead concluded that amendment and termination of a plan were not obstacles to equitable relief. *Id.* 1137 (citing the Ninth Circuit's opinion in *Amalgamated Clothing & Textile Workers Union v. Murdock,* 861 F. 2d 1406 (9th Cir. 1988)).[24] The district court further observed that equitably reviving the trust (plan) or

---

[22] As argued in the next section, *Coan v. Kaufman* is factually distinguishable and would not preclude restoration of the Plan if the Defendants indeed terminated the Plan during the course of this litigation.
[23] Though plaintiff also asserted a Section 502(a)(3) claim, the focus was on the Section 502(a)(2) claim. However, this does not change the nature of the argument.
[24] In *McBride v. v. PLM Intern. LTD,* 179 F. 3d 737, 739 (9th Cir. 1999), the employer simultaneously discharged and employee and terminated the employee benefit plan. The employee argued that he was discharged for complaining about the plan termination. The employer argued that since the plan had been terminated, the employee lacked standing. The Ninth Circuit rejected this argument. The court reasoned as follows:

creating a new trust to hold monies for the benefit of participants was an available equitable remedy to redress the breach of fiduciary duty. *Id*. The court found that such a remedy is consistent with the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), where the Court observed that given ERISA's remedial nature, "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Id*.

Thus, in this case, if defendants terminated the AE Plan after the filing of this suit, the Court can still award appropriate equitable relief. Plaintiffs submit that the Court has the power to restore the Plan and require the fiduciaries to interpret it without giving any force to, among other things, the unlawful forfeiture provisions (including the vesting schedule).

> (b)     Plaintiffs seek meaningful appropriate equitable relief under §
>          502(a)(3)(B) to redress fiduciary and/or statutory violations that cannot be
>          fairly characterized as monetary damages.

In addition to arguing that plaintiffs cannot obtain reformation because the Plan has terminated, defendants also argue that "reformation" of the AE Plan to eliminate the unlawful forfeiture provisions constitutes monetary relief because the end result is payment of benefits to plaintiffs. (Doc. 74 p. 14).   Defendants' efforts to convert all

---

Policy considerations stemming from ERISA mandate that participant status and standing under its whistleblower provision be adjudged at the time of the alleged ERISA violation. To hold otherwise would allow an employer simply by wrongfully firing a whistleblowing employee and then terminating the Plan, wrongfully or otherwise, to deprive that employee of the right to sue the employer for retaliation prohibited by ERISA. Such a holding would undercut the very protections ERISA was designed to afford.

The same policy considerations apply to the case at bar to even greater degree given that the Plan was terminated after litigation commenced.  The defendants cannot avoid liability for violating ERISA's basic protections by simply terminating the Plan.

forms of equitable relief into "monetary damages" does not withstand scrutiny.  Courts

opting for Section 502(a)(3) as the vehicle for addressing plan terms that violate ERISA's

substantive provisions have refuse to deny equitable relief because participants may

ultimately receive their accrued retirement benefits.

In *Carrabba v. Randall Food Markets*, 145 F. Supp. 2d 763 (N.D. Tex. 2000),

*aff'd*,  252 F. 3d 721 (5th Cir. 2001) (*per curiam*), *cert. denied*, 534 U.S. 995 (2001), the

district court ordered a terminated top hat plan to restore benefits to participants in a

manner that would give effect to the accrual and vesting provisions of ERISA.  *Id*. at 770.

After a bench trial, the court found that the plan was not a top hat plan and, as a result,

the plan violated ERISA's accrual and vesting provisions.

The court noted that given the lack of evidence of what additional benefits were

owed to plan members, a Section 502(a)(1)(B) would not provide much relief, if any, for

the ERISA violations. *Id*. at 770.   Instead, the court found that Section 502(a)(3) was the

appropriate section to remedy the violations at issue and concluded that "equity would be

served in this case if the members of the Class were to be placed in basically the same

financial position in which they would be if the employer had complied with the

minimum requirement necessary for MSP [the plan] to satisfy the accrual and vesting

provisions of ERISA." *Id.* at 771. *See In Re New Century Holdings*, 2008 WL 1829587

[YEAR] (Bankr. D. Del.) (adopting the *Carrabba* court's understanding of available

equitable relief in the context of a case challenging a plan's "top hat" exemptions.); *see*

*generally Roberts v. Fearless Farris Service Stations*, 2007 WL 2705587 [YEAR] (D.

Idaho) (discussing a trial plan for a case involving a challenge a top hat exemption and

observing with approval that in *Carraba* the court found equitable relief was necessary to remedy the violations).

Nevertheless, defendants rely on *Coan v. Kaufman*, 333 F. Supp. 2d 14 (D. Conn. 2004), for the proposition that because "reformation" would effectively seek money damages only, it is not a permissible equitable remedy under Section 502(a)(3). As an initial matter, reformation is not the only equitable remedy available to redress the statutory violations at issue in this case. As mentioned above, plaintiffs seek an injunction requiring compliance with ERISA and rescission or non-enforcement of provisions that violate ERISA's vesting and accrual rules. Further, *Coan* is factually distinguishable.

*Coan* involved a 401K plan where the accrued benefit is simply the value of the individual account at the time it is liquidated. The plaintiff argued that the defendants breached their fiduciary duties by making imprudent investments which resulted in a monetary loss and she sought to recover the investment losses caused by the breach. There was no dispute, however, that she received what was in her account when she took a distribution. The only equitable relief the plaintiff sought (i.e. restoration of the Plan) was for the purpose of distributing recovered monies. Furthermore, unlike this case, the plan in *Coan* was terminated prior to the filing of suit and there was no dispute concerning the termination.

In the case at bar, plaintiffs properly seek restoration (if the Plan was terminated), reformation/rescission of terms that violate ERISA's substantive provisions and/or an injunction requiring administration of the Plan in a manner that is consistent with ERISA's statutory requirements. *See, e.g. Devito, supra*, at 276 (noting that reformation

to ensure compliance with ERISA's statutory accrual rules constitutes proper equitable relief); *see also, De Pace v. Matsushita Elec. Corp.* 257 F. Supp. 2d 543, 566-67 (E.D.N.Y. 2003) (noting that reformation has been recognized as an appropriate remedy for certain ERISA violations).   Indeed, it is central to the relief sought by plaintiffs that the forfeiture provisions in the Plan are not enforceable.   The offending provisions either (1) do not have any effect as matter of law or (2) the Court must order some appropriate equitable relief to eliminate or prevent the application of the forfeiture provisions.   The type of relief sought by plaintiffs is far different than simply requesting the restoration of a plan in order to receive and distribute monies.

The fact that plaintiffs may receive accrued benefits if appropriate equitable relief is awarded does not convert the claim into one seeking only monetary damages.   In *Mathews v. Chevron Corp*, 362 F. 3d 1172, 1185-1186 (9th Cir. 2004), the plaintiffs claimed that fiduciaries misrepresented the availability of enhanced retirement benefits afforded to employees involuntarily terminated under a reduction in force program known as SITE.   *Id.* at 1177.   Because they were not provided information and/or received misinformation about the program, the plaintiffs voluntarily retired.   The plaintiffs sued under Section 502(a)(3) for breach of ERISA fiduciary obligations and sought appropriate equitable relief to remedy the violation. The district court ordered the defendant to modify its records to reflect that the prevailing plaintiffs were involuntarily terminated and to ensure that the prevailing plaintiffs are provided the SITE benefit in accordance with such change in its records.   The defendant appealed the order and argued that the district court granted relief not available under Section 502(a)(3) because the relief amounted to money damages.   The Ninth Circuit rejected this argument on the

grounds that the remedy was consistent with the Supreme Court's holding in *Varity Corp. v. Howe, supra.*

In reaching this conclusion, the Ninth Circuit noted that, on its face, an order to modify plan records is not an award of monetary damages. *Id.* at 1186. The fact that modifying plan records may result in the granting of benefits does not convert such relief into an award of monetary damages. Indeed, the mere payment of benefits does not render the award "compensatory money damages." *Id.* Rather, the Court characterized the district court's order as equitable in substance because it "simply puts them [plaintiffs] in the position they would have been had Chevron not breached its fiduciary duties. . ." *Id.* Likewise, the fact that plaintiffs in the case at bar may receive benefits if the Court orders (1) restoration of the Plan, (2) reformation or equitable rescission of the unlawful provisions and/or (3) enjoins the application of unlawful forfeiture provisions does not convert such equitable or injunctive relief into an award of compensatory money damages. Instead, it merely puts plaintiffs in the position they would have been in had the Plan complied with ERISA's vesting and accrual rules. *See, Carrabba*, 145 F. Supp. 2d at 770.

        (c)    <u>Plaintiffs request for injunctive relief under § 502(a)(3)(A) is not a request for monetary damages in the form of legal restitution. The requested injunction seeks to prevent defendants from applying forfeiture provisions that clearly violate ERISA.</u>

In addition to the argument that plaintiffs' request for injunctive relief under Section 502(a)(3)(A) is effectively a request for money damages because the Plan has been terminated, defendants also argue that an order enjoining them from denying plaintiffs' accrued retirement benefits constitutes impermissible legal restitution. (Doc. 74, p. 14). Of course, the injunction described in this manner differs from the injunction

requested above, namely, (1) restoration of the Plan (assuming it is necessary given the Plan terminated after litigation commenced) and/or (2) a prohibition from enforcing forfeiture provisions that violate ERISA.

Defendants cite *Great-West* for the proposition that only equitable restitution is available under Section 502(a)(3). According to Defendants equitable restitution allows the imposition of a constructive trust or equitable lien on money that in good conscience belongs to the plaintiff and which can be clearly traced back to the particular funds or property in defendant's possession. Defendants argue that the "tracing" requirement cannot be met here because the AE Plan was unfunded. (Doc. 74, p. 15). This argument lacks merit because it ignores the fact that defendants were required under ERISA to establish a trust if the Plan does not meet the top hat exemption.

Defendants' discussion of the doctrine of "equitable restitution" fails to account for the Supreme Court's recent decision in *Sereboff v. Mid-Atlantic Med. Servs. Inc.*, 126 S. Ct. 1874 (2006). In *Sereboff*, the Court held that an ERISA health insurance plan could assert an equitable lien on settlement monies under Section 502(a)(3). The plaintiffs argued that the insurer failed to meet the tracing requirements set out in *Great-West* as a condition of equitable restitution. The Court noted that equitable restitution based on an agreement did not historically require tracing to identifiable property in the defendant's possession. *Id.* at 1875-76. More importantly, the Court rejected the argument that under *Great-West* all forms of equitable restitution must meet the strict tracing rules discussed in that opinion. *Id.*

In this case, plaintiffs should not be held to strict tracing rules because defendants failed to establish a trust as required under ERISA. Had defendants complied with

37

ERISA's provisions governing retirement plans, they should have created a trust and set aside sufficient monies to fund plaintiffs' accrued benefits. (29 U.S.C. § 1082 (setting forth minimum funding standards) & 29 U.S.C. § 1103 (requiring establishment of a trust)). In fact, the failure of defendants to require the plan sponsor (employer) to segregate sufficient monies to pay plaintiffs' accrued benefits violated ERISA's prohibit transaction rules. (29 U.S.C. § 406(a)). Because Merrill Lynch still holds monies that properly belong in a trust for the benefit of plan participants, the district court has the equitable power to impose a constructive trust or require disgorgement of such monies necessary to fund the plaintiffs' accrued benefits. *See, Harris Trust & Savings v. Solomon Smith Barney*, 530 U.S. 230 (2000)(holding that appropriate equitable relief under § 502(a)(3) includes restitution in the form of a constructive trust or disgorgement of monies a party in interest received as a result of a prohibited transaction).[25]

The cases defendants cite in support of the strict tracing requirement do not aid their cause. In *Alexander v. Bosch Automotive Systems*, 232 Fed. Appx. 491 (6th Cir. 2007), the issue was whether plaintiffs laid off in violation of Section 510 could obtain monetary relief under Section 502(a)(3)(B). The court concluded that plaintiffs had no remedy under Section 502(a)(3), in part, because they filed suit after the plant shutdown. In any event, there was no allegation that the defendants failed to comply with ERISA's minimum vesting, accrual, funding or even fiduciary obligations.

In *Nechis v. Oxford Health Plans*, 421 F. 3d 96, 103 (2d Cir. 2005), plaintiffs sued claiming that the defendant had adopted several unlawful practices related to the delaying and/or denying of payments for chiropractic services. *Id*. at 99. The court

---

[25] Because Merrill Lynch (as successor to Advest) is the AE plan sponsor, it is a party in interest under ERISA. 29 U.S.C. § 1002 (14).

rejected the plaintiffs' claim for equitable restitution under § 502(a)(3) because "the monies Nechis seeks to impose a trust are premiums paid for health care coverage, which Oxford is under no obligation to segregate and which Nechis does not allege to be segregated in a separate account." *Id*. at 103.  In the case at bar, if plaintiffs establish that the AE Plan does not qualify as a "top hat" plan, then defendants were obligated to segregate funds sufficient to satisfy plaintiffs' accrued benefits. [26]

    4.    <u>The Complaint also seeks relief for the fiduciary breaches under Section 502(a)(2).  The Supreme Court recently held that a participant can assert a claim for individual benefits under Section 502(a)(2).</u>

In paragraph 61 of the Amended Complaint, plaintiffs assert a claim under ERISA Section 502(a)(2) for the alleged breaches of fiduciary duty.  Section 502(a)(2) authorizes a cause of action on behalf of the plan for the relief provided under Section 409. (29 U.S.C. § 1109)   As argued above, defendants breached their fiduciary duties, in part, by failing to create a trust and secure sufficient monies to pay the Plan's accrued liabilities (i.e. plaintiffs' accrued benefits).  The fact that (if successful) plaintiffs may receive their accrued retirement benefits does not remove this case from the ambit of Section 502(a)(2).  In *LaRue v. DeWolff, Boberg & Associates, Inc.*. 128 S.Ct. 1020 (2008), the Supreme Court recently held that a participant seeking damages for breaches of fiduciary duty that decreased the value of his individual account could assert a 502(a)(2) on behalf of the plan.   The Court noted that the fact that 401k plans consists of individualized accounts does not mean that the plan did not suffer an injury when fiduciaries made imprudent decision regarding the operation of the plan.   Like the situation in *LaRue*, the

---

[26] For this same reason, *Pelosi v. Schwab Capital Markets, L.P.*, 462 F. Supp. 2d 503 (S.D.N.Y. 2006) is distinguishable. In that case, the claim for equitable restitution failed because the severance plan at issue was not required to segregate assets under ERISA. *Id*. at 514.

AE Plan suffered an injury (namely accrued liabilities without adequate funding from the plan sponsor) when the fiduciaries failed to secure sufficient funding for the liabilities and ensure that such monies were properly segregated as required under ERISA's fiduciary obligations. (29 U.S.C. §§ 1103-1104). Defendants have not contested the appropriateness of relief under Section 502(a)(2) and, thus, the Court should find that such relief is available as well.

## IV.    CONCLUSION

Plaintiffs respectfully request that the Court deny defendants' motion for summary judgment for all the above stated reasons.

Respectfully submitted,

THE PLAINTIFFS

By: /s/ Richard P. Rouco
    Richard P. Rouco

**WHATLEY DRAKE
& KALLAS, LLC**
2001 Park Place, Suite 1000
Birmingham, AL 35203
(205) 328-9576

James Hartley
**DRUBNER & HARTLEY, L.L.C.**
500 Chase Parkway
Waterbury, CT 06708
(203) 753-9291

Charles Hellman
Jennifer Sclar
**DRUBNER & HARTLEY, L.L.C.**
One Penn Plaza, Suite 4507
New York, NY 10119
(212) 736-2121

**McCORMICK & O'BRIEN LLP**
Liam O'Brien
42 West 38th Street
New York, NY 10018
(866) 853-0931

**GRAY & WHITE**
Mark Gray
1200 PNC Plaza
Louisville, KY 40202
(502) 585-2060


*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on May 15, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

<u>/s/Richard P. Rouco</u>
Richard P. Rouco