UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM FENWICK and | : | |
| TIMOTHY FISHER, on behalf | : | 3:06cv880 (WWE) |
| of themselves and all others | : | |
| similarly situated, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MERRILL LYNCH & CO., INC., | : | |
| MERRILL LYNCH, PIERCE, FENNER | : | |
| & SMITH INCORPORATED, | : | |
| ADVEST GROUP, INC., | : | |
| and ADVEST, INC., | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON MOTION FOR**
**SUMMARY JUDGMENT AND MOTION FOR CLASS CERTIFICATION**

Plaintiffs William Fenwick and Timothy Fisher bring this action on behalf of themselves and all similarly situated adult participants and/or beneficiaries of the Advest, Inc. Account Executive Nonqualified Defined Benefit Plan ("AE Plan") who have been or will be denied benefits under the AE Plan because they terminated their employment at Advest.

Specifically, plaintiffs assert that defendants breached the Employee Retirement Income Security Act ("ERISA") because the terms of the AE Plan violated the minimum vesting standards of 29 U.S.C. §1053, and because defendants failed to provide plaintiffs with a summary plan description pursuant to 29 U.S.C. § 1022.

Plaintiffs have moved for class certification and defendants have moved for summary judgment. For the following reasons, the motion for summary judgment will be granted in part and denied in part. The motion for class certification will be denied without prejudice to renewal.

**BACKGROUND**

The parties have submitted statements of facts with supporting affidavits and evidentiary materials, which reflect the following factual background.

In 1992, Advest established the AE Plan as an unfunded benefit plan with all payments under the Plan to be paid from the general funds of Advest. The AE Plan represented that it was available to "a select group of highly compensated account executives."

At the inception of the AE Plan, only those brokers with gross commissions of at least $200,000 during fiscal year 1992 were eligible to participate in the AE Plan. The AE Plan's minimum gross commissions threshold rose to $245,000 by fiscal year 2002. After that time, no new participants were permitted to enter the Plan.

The AE Plan provided that all payments of benefits to any Participant "shall be discontinued and forfeited," if

> (a) <u>Termination During Initial Ten-Year Period</u>. The Participant's service with the Company is terminated before the Participant has completed the Initial Ten-Year Period, unless such termination occurs: (i) as a result of death or Permanent Disability; (ii) after the Participant has attained age 65; or (iii) more than 9 months, but not more than 24 months, following a Change of Control.

The AE Plan allowed the Board of Directors to "amend, modify, change, revise or discontinue this Plan by amendment at any time," provided that "(a) no amendment shall increase the duties or liabilities of the Board of Directors or the Committee without written consent of each member and (b) no amendment shall be made without the written consent of a Participant if the effect of such amendment would reduce a Participant's Benefit to the extent accrued as of the date of the amendment."

Effective October 31, 2005, Advest adopted the Second Amendment to the AE Plan. The Second Amendment eliminated the 9- to 24-month period following a Change of Control during which a participant could terminate employment without forfeiting benefits for failure to satisfy the 10-year vesting requirement. The amendment also modified the AE Plan by providing for full vesting and payment of accrued benefits to participants whose benefits had not yet vested but were still employed on June 30, 2007.

In section 8.7, the AE Plan provided that "if any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof and the Plan shall be construed and enforced as if such provisions, to the extent invalid or unenforceable, had not been included."

On December 2, 2005, defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated acquired the Advest Group, Inc.

Plaintiff William Fenwick was employed as an account executive for Advest between October 31, 1994 and November 3, 2005 when he terminated his employment with the company. In 1994, during Fenwick's recruitment to Advest, Randy Burns, a Divisional Manager at Advest, informed Fenwick that the AE Plan contained a 10-year vesting schedule, as well as forfeiture provisions. In 1995, Mr. Fenwick commenced participation in the AE Plan.

Plaintiff Timothy Fisher was employed as an account executive for Advest in March 1996, until he terminated his employment on December 9, 2005. By 1998, Mr. Fisher had become an eligible participant in the AE Plan.

Upon commencement of his participation, Fisher received a two-page benefit statement that indicated that he could request payments from the Plan as early as age 55, provided that he had 10 years of participation in the Plan.

Neither Fenwick nor Fisher received a summary plan description during their participation in the AE Plan.

Glenn Dittes, a Human Resources Vice President, avers that, as of July 20, 2007, all vested, accrued benefits were paid to the Plan participants. The AE Plan provides that it automatically terminates when there are no participants or claims to benefits under the terms of the Plan.

## **DISCUSSION**

Motion for Summary Judgment

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary

judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.

In counts one and two, plaintiffs seek relief pursuant to ERISA §§ 502(a)(1)(B), (a)(2) and (a)(3) based on the AE Plan's allegedly illegal forfeiture terms.  Defendants argue that plaintiffs' claims are barred by the relevant statute of limitations.

ERISA Section 502 (a)(1)(B)

The parties agree that the relevant statute of limitations for claims brought pursuant to §§ 502(a)(1)(B) is the six-year period provided for state law actions on written contracts.  See Miles v. N.Y. State Teamsters Conference, 698 F.2d 593, 598 (2d Cir. 1983).  When the statute of limitations begins to run is a question of federal common law.  Carey v. Int'l Bhd. of Electrical Workers Local 363 Pension Plan, 201 F.3d 44, 47-48 (2d Cir. 1999).   The parties agree that the federal "discovery rule" governs the accrual date for an ERISA claim.  The statute of limitations begins to run when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries.  Miles, 698 F.2d at 47.  Although the limitations period is generally triggered when a participant's application for benefits is denied, a clear repudiation by the plan may also occur where there has been no formal application for benefits provided that such repudiation is known or should be known to the beneficiary.  Hirt v. Equitable Retirement Plan for Employees, Managers and Agents, 2008 WL 2675828 (2d Cir. 2008).  Thus, the limitations period may run earlier than a formal denial of benefits where a participant has knowledge of the clear repudiation by a plan amendment or an informal letter denying benefits.  Hirt v. Equitable Plan for

Employees, Managers and Agents, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006), aff'd by, 2008 WL 2675828 (2d Cir.). In Hirt, the statute of limitations was held to run from the effective date of a plan amendment that repudiated the participants' pre-amendment entitlement to benefits. This holding hinged upon the fact that the participants had received a summary plan description that "unequivocally repudiated" a participant's entitlement to pre-amendment benefits by "plainly and accurately" communicating the plan terms and distinguishing between pre- and post-amendment benefits.

Here, defendants assert that the statute of limitations runs from the date of the plaintiffs' participation in the AE Plan because the plaintiffs received some communication relative to the Plan's forfeiture provision if a participant left his or her position without 10 years of service.[1] Defendants maintain that plaintiff Fenwick received notice that the AE Plan terms constituted a clear repudiation of his entitlement to accrued and nonforfeitable benefits by oral communication, and that Fisher received notice by way of the benefit statement provided to him upon commencement of his participation in the Plan.

Here, the Court is hard pressed to find, as a matter of law, that the plaintiffs had knowledge of a clear and unequivocal repudiation of their entitlement to accrued benefits. It is undisputed that plaintiffs did not receive a copy of the summary plan description, and therefore, they cannot be charged with knowledge of the full extent of

---

[1] Pursuant to 29 U.S.C. § 1053, a plan satisfies ERISA if a participant has accrued benefits that are either (1) 100% nonforfeitable after a participant completes no more than 5 years of service; or (2) 20% nonforfeitable after a participant completes no more than 3 years of service, increasing thereafter on an annual sliding scale to become 100% nonforfeitable upon completion of seven years of service.

the terms of AE Plan. As the Second Circuit has emphasized, the summary plan description retains "the central role in communicating the terms of a plan to its members." Frommert v. Conkright, 433 F.3d 254, 265 (2d Cir. 2006). In this instance, plaintiffs had no notice that the terms of the AE Plan repudiated their entitlement to accrued benefits because they had no knowledge of the Plan terms as a whole or whether the Plan was subject to ERISA.

In fact, defendants maintain that the AE Plan constituted a "top hat" plan designed for a select group of highly compensated employees, and therefore, it was exempt from ERISA's substantive provisions, including those regarding vesting, funding and fiduciary responsibilities. Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 217 (2d Cir. 2006). The resolution of whether the AE Plan represents a top hat plan requires a fact-specific inquiry of qualitative and quantitative data to determine whether participants for an employee benefit plan constitute a select group of management or highly compensated employees, which evidence is not yet before this Court. Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 288 (2d Cir. 2000). Here, no evidence indicates that plaintiffs received or should have known information regarding either the Plan status or the Plan participants prior to their termination of employment. Therefore, construing the evidence most favorably to plaintiffs, the Court finds that plaintiffs did not have knowledge of a clear repudiation of benefits to which they now allege entitlement until they terminated their employment. See Miles, 698 F.2d at 599 (not clearly erroneous to find that repudiation occurred upon denial of pensions rather than earlier date in which defendants had indicated that plaintiffs' benefits would be

7

repudiated in the future). Accordingly, the Court finds that plaintiffs' section 502(a)(1)(B) claims are not barred by the six-year statute of limitations.

ERISA § 502(a)(2) and (3)

Plaintiffs' ERISA §§ 502(a)(2) and (a)(3) claims for breach of fiduciary duty are subject to the limitations period as articulated in 29 U.S.C. § 1113:

> no action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility or obligation under this part or with respect to a violation of this part after the earlier of —
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in case of an omission the latest date on which the fiduciary could have cured the breach or violation or
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

Plaintiffs allege that defendants breached their fiduciary duties by denying plaintiffs benefits pursuant to the AE Plan's alleged illegal forfeiture provisions, and "by failing to take steps to ensure that the Plan complied with all of the substantive and procedural requirements of ERISA...."

Defendants' argument focuses on the three-year limitations period.[2] Defendants submit that plaintiffs had "actual knowledge" of the alleged breach by 1998, and therefore, their claim expired in 2001.

A plaintiff has "actual knowledge" of the breach or violation when that plaintiff has knowledge of all material facts necessary to understand that an ERISA fiduciary

---

[2]Relative to the 6-year limitations period, the Court finds, upon review of the evidence now adduced, that defendants could have cured the alleged breach of fiduciary duty by invalidating the allegedly illegal forfeiture provisions as late as June 30, 2007 when the lump sum payments occurred.

has breached a duty or otherwise violated ERISA. Caputo v. Pfizer, Inc., 267 F.3d 181, 192 (2d Cir. 2001). Caputo instructs that a plaintiff need not have knowledge of the relevant law, but must have knowledge of all facts necessary to constitute a claim, and that disclosure of a transaction that is not inherently a statutory breach of fiduciary duty cannot communicate the existence of an underlying breach.

Consistent with this Court's prior discussion, the Court cannot find, as a matter of law, that plaintiffs had "actual knowledge" that defendants had breached a fiduciary duty in 1998. At that time, plaintiffs had not received information regarding all of the Plan terms and the Plan participation so as to afford plaintiffs actual knowledge that a breach of fiduciary duty had occurred.

Accordingly, the Court finds that plaintiffs' breach of fiduciary duty claims are not time-barred.

Standing

Defendants argue that plaintiffs lack Article III standing because ERISA provides them with no remedy pursuant to §§ 502(a)(1)(B), (a)(2) and (a)(3).

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or threatened injury as a result of the illegal conduct of the defendant; (2) the injury is fairly traceable to the challenged action; and (3) the injury is redressable by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982).

ERISA § 502(a)(1)(B)

Defendants assert that plaintiffs are not entitled to a remedy under ERISA § 502(a)(1)(B), which permits a plan participant to bring a civil action "to recover benefits

due him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." Defendants maintain that plaintiffs cannot allege that they are entitled to benefits "under the terms of the AE Plan" because their accrued benefits were subject to the Plan's forfeiture provisions.

The Court need not consider whether defendants advance an accurate construction of ERISA § 502(a)(1)(B). Pursuant to section 8.7 of the AE Plan, plaintiffs are entitled to accrued benefits if the forfeiture provisions are held to be invalid or unenforceable. Accordingly, plaintiffs have standing to assert their claims for benefits under the terms of the Plan.

ERISA § 502(a)(3)

Defendants argue that plaintiffs seek monetary damages, which are not provided for as "appropriate equitable relief" under ERISA § 502(a)(3). Plaintiffs counter that they are entitled to equitable relief in the form of reformation or an injunction prohibiting defendants from enforcing invalid terms of the AE Plan.

The Supreme Court has expressly rejected a statutory construction allowing relief under ERISA § 502(a)(3) to extend "to whatever relief a court of equity is empowered to provide in the particular case at issue (which could include legal remedies that would otherwise be beyond the scope of the equity court's authority)." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002). Section 502(a)(3) requires that both the basis for the claim and the "nature of the recovery" be equitable. Sereboff v. Mid Atlantic Med. Servs., Inc., 126 S. Ct. 1869, 1874 (2006). Even if breach of fiduciary duty is an equitable claim, remedies for breach of that fiduciary duty are only considered "appropriate equitable relief" for purposes of

section 502(a)(3) if plaintiff seeks relief that was typically available in equity. Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993). Specific performance to pay on a contract or an injunction to compel the "payment of money past due" were not typically available in equity. Great-West Life & Annuity Ins. Co., 534 U.S. at 211. Further, as Great-West Life instructs, restitution represents (1) a legal remedy when a plaintiff cannot "assert title or right to possession of a particular property" but seeks a judgment imposing personal liability to pay a sum of money; and (2) an equitable remedy "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff" can "clearly be traced to particular funds or property in the defendant's possession." Id. at 213.

Equitable restitution or imposition of a constructive trust seek to eliminate a defendant's gain rather than assuage a plaintiff's loss, and therefore, a defendant's possession of the funds or property is essential to the remedy. Harris Trust and Sav. Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 251 (2000) (constructive trust may be imposed on plan assets wrongly transferred to third party); Amschwand v. Spherion Corp., 505 F.3d 342, 348 (5th Cir. 2007) (possession of fund or property is the "*sine qua non*" of restitutionary recovery). Restitutionary relief is deprived of its equitable character where the defendants "never possessed the funds in question and thus were not unjustly enriched." Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006).

Decisional law within the Second Circuit has rejected claims where the plaintiff advanced requests for money owed but failed to identify a particular fund possessed by the defendant. See, e.g., Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005) (no claim in equity where defendant did not segregate the monies upon which

11

plaintiff sought to impose a trust); Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan, 2008 WL 817112 (E.D.N.Y. 2008) (labeling a portion of defendants' general assets did not satisfy the requirement that plaintiff identify a particular fund); Fisher v. Penn Traffic Co., 2007 WL 496657 (S.D.N.Y. 2007) (rejecting, as request for legal compensatory damages, claim for relief in the form of a declaration that defendants breached fiduciary duties and the amount of the benefit owed to plaintiff); Coan v. Kaufman, 333 F. Supp. 2d 14 (D. Conn. 2004) (request for an injunction requiring defendants to restore funds to defunct 401(k) plan "does not transform what is effectively a money damages request into equitable relief.").

In this instance, it is undisputed that the AE Plan was an unfunded plan. Plaintiffs cannot demonstrate that defendants are in possession of a particular fund or property, which affords defendants unjust enrichment. The gravamen of plaintiffs' requests for reformation or an injunction — that they receive the monetary compensation that is allegedly owed to them due to the invalid terms of the AE Plan — reveals the legal nature of plaintiffs' prayer for relief. Accordingly, the Court will grant summary judgment on the section 502(a)(3) claims.

ERISA § 502(a)(2)

Plaintiffs claim breach of fiduciary duty pursuant to section 502(a)(2). Defendants assert that plaintiffs cannot establish that such claim is entitled to relief.

Section 502(a)(2) authorizes a participant to bring a breach of fiduciary duty action to make a fiduciary "personally liable to make good to such plan any losses to the plan resulting for each such breach." 29 U.S.C. §§ 1132(a)(2) & 1109(a). Such claims are brought in a representative capacity on behalf of the plan. Massachusetts

Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n. 9 (1985). Plaintiffs may not utilize section 502(a)(2) to seek damages on their own behalf rather than on behalf of the Plan, although plaintiffs may seek recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. LaRue v. DeWolff, Boberg & Assocs., Inc., 128 S. Ct. 1020, 1026 (2008) (petitioner alleged that fiduciary's failure to carry out directions of petitioner relevant to his individual account of a defined contribution plan depleted amount in account).

In this instance, plaintiffs have not established that the AE Plan sustained asset losses. Unlike the defined contribution plan at issue in LaRue, AE Plan was unfunded and plaintiffs made no contributions to it.[3] Summary judgment will be granted on plaintiffs' ERISA section 502(a)(2) claim.

**Motion for Class Certification**

In light of the Court's rulings on summary judgment, the motion for class certification concerns plaintiffs' claims pursuant to ERISA § 502(a)(1)(B).

To receive class certification, plaintiffs must first satisfy the four elements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality and the adequacy of representation. Plaintiffs must then meet at least one of the three subsections of Rule 23(b). McLaughlin v. American Tobacco Co., 522 F.3d 215, 222

---

[3] Even if plaintiffs have wrongly been denied accrued benefits under the Plan, such unpaid employer contributions are not considered plan assets. In re Luna, 406 F.3d 1192, 1204 (10th Cir. 2005).

(2d Cir. 2008). Rule 23(b)(1) is satisfied where the prosecution of separate actions by or against individual members of the class would create a risk of:

> (A) inconsistent or varying adjudications ... which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to the individual members of the class which would be dispositive of the interest of the other members not parties to the adjudications.

Rule 23(b)(2) applies where injunctive or declaratory relief is sought that is appropriate respecting the class as a whole. Rule 23(b)(3) provides that a class may also be certified under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly efficiently adjudicating the controversy."

Defendants' arguments challenging certification of this action mirror those made attacking the merits of plaintiffs' claims on summary judgment. Defendants also assert that claims for damages are not appropriate for class certification. By resolving issues relevant to the statute of limitations and standing, the Court has altered the posture of this case. The Court requires plaintiffs to amend the complaint to plead only the relief sought under the remaining ERISA § 502(a)(1) claim and to file a renewed motion for class certification with a focus on whether plaintffs' claims for relief are appropriate for class certification or whether any declaratory and monetary aspects of the case are better suited for separate certification under Rule 23(b)(2) and (b)(3) respectively. See, e.g., Stoffels v. SBC Communications, Inc., 238 F.R.D. 446 (W.D. Tex. 2006). Accordingly, the motion for certification is denied without prejudice to renew within 30 days of this ruling's filing date.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment [#73] is GRANTED in part and DENIED in part. Summary judgment is GRANTED as to plaintiffs' breach of fiduciary duty claims pursuant to ERISA § 502(a)(2) and (a)(3). Summary judgment is DENIED as to the claim pursuant to ERISA § 502(a)(1)(B).

The motion for certification [#66] is DENIED without prejudice to renewal.

Plaintiffs are instructed to file an amended complaint consistent with this ruling within 15 days of this ruling's filing date. Plaintiffs are also afforded 30 days from this ruling's filing date to file a renewed motion for certification.

_____/s/_____
Warren W. Eginton
Senior U.S District Judge

Dated this 11th day of August 2008, at Bridgeport, Connecticut.